# CHARLESTON.

## DARNELL v. WILMOTH et al.

Submitted March 8, 1910.     Decided November 14, 1911.

1. APPEAL AND ERROR—*Record—Vacation Order of Judge.*

   A vacation order made by the trial judge, under his signature and seal, within the time fixed by law for saving and certifying bills of exceptions, which order is in itself a veritable bill of exceptions, specifically pointing out and identifying by certain and sure references the stenographer's transcript of evidence and other papers pertaining to the trial, and declaring that they are thereby made a part of the record, operates to bring into the record the evidence and papers referred to, though not embraced in formal bills of exceptions. (pp. 705-6).

2. LOGS AND LOGGING—*Deed of Standing Timber—Construction.*

   A particular enumeration of the kinds of standing timber meant to be conveyed, contained in the granting clause of a deed, will not be enlarged by a separate and subsequent general clause stating that the intention of the parties is to convey all the timber included in the bounds named in the deed, but the general words used in the latter clause will be held to apply to timber *ejusdem generis* with that specifically named. (pp. 707-8).

3. TRESPASS—*Cutting Growing Timber—Measure of Damages.*

   For the cutting of growing timber having no more than ordinary commercial value, a proper measure of damages is the market value on the stump. (p. 709).

4. SAME—*Cutting Timber—Exemplary Damages.*

   Exemplary damages are not awardable for the cutting of timber when it appears that the trespass was not wanton but was committed under a *bona fide* claim of right. (p. 709).

Error to Circuit Court, Pocahontas County.

Action by W. S. Darnell against H. J. Wilmoth and others. Judgment for plaintiff, and defendants bring error.

*Reversed.*

*N. C. McNeil* and *F. R. Hill,* for plaintiffs in error.

*L. M. McClintic* and *Price, Osenton & McPeak,* for defendants in error.

ROBINSON, JUDGE:

In. this action seeking damages for cutting growing timber, plaintiff has judgment, by the verdict of a jury, and defendants challenge the regularity and propriety of the same by writ of error.

A preliminary question is raised: Are the papers and testimony submitted as evidence before the jury, and the instructions given and refused, made a part of the record by proper bills of exceptions? If they are not made a part of the record, we cannot consider the assignments of error, for the assignments all relate to these matters pertaining to the trial. We hold, however, that the evidence and instructions are properly before us as record of the court below. It is true that they have been made so by a method somewhat novel, but, we think, none the less substantial and effective. The trial judge has certified the stenographer's transcript by his signature and seal under a declaration that it contains all the evidence adduced at the trial. The vacation order which the judge has made pursuant to the statute, directed to the clerk for entry, perticularly identifies this transcript and recites the name of each witness whose testimoney it contains. It also points out the written papers offered in evidence and the instructions given and refused, by references which leave no uncertainty as to the identification of the very papers and instructions meant. Then that order, a veritable bill of exceptions itself, under the seal and signature of the judge, declares that all the evidence, papers and instructions referred to and identified therein are "made a part of the record as fully and completely and to have the same effect as if entered in term time." This act of the trial judge, in vacation, within the time fixed by statute, clearly suffices to bring the papers, evidence and instructions into the record. The identification is as completely set out as it ordinarily is in separate and formal bills of exceptions. The documents referred to are so plainly pointed out that there can be no mistake in referring to them in connection with the vacation order of the trial judge. The mere fact that the judge makes the vacation order to have the force of a bill of exceptions itself is no argument against the validity of the procedure. The judge has simply done by the one order what is generally done by separate bills of exceptions referred to,

and certified, by an order. The old method of formal bills of exceptions tends to more certainty, and we hope that there will be no general departure therefrom. It is at least more judicial. But where there is the substantiality for the purpose of making evidence and papers a part of the record that is disclosed in the order of the trial judge in this case, we cannot say that it does not serve the purpose. Old forms, however, have arguments in their favor.

The controversy arises from the terms of the deed by which plaintiff conveyed standing timber on his land to one Arbogast. The timber conveyed to Arbogast, by intermediate conveyances, became vested in defendants. Plaintiff claims that his deed did not convey the chestnut and maple timber. Defendants insist that it conveyed timber of all kinds, and that the timber for which plaintiff claims damages was their own. So the case turns on a construction of the deed.

The granting clause of the deed, omitting the statement of consideration, is as follows: " * * * * the parties of the first part sell and convey with general warranty unto the said Arbogast all the oak timber of all kinds, all the spruce and hemlock, the ash and poplar, the hickory, except for farm use, and the white and yellow lynn, timber on a tract of 196 acres lying on both sides of Deer Creek, a tributary of Brush run, adjoining the lands of Peter Yeager and others, and bounded as follows, to wit": The bounds of the tract are set forth by definite calls and distances. Following these there is a stipulation as to the time "said timber is to stand" on the land. Then comes the last paragraph of the deed—a separate one: "It is the intention of the parties of the first part to convey unto the said Arbogast all the timber included in said bounds and the parties of the first part give a free right of way for cutting and removing said timber or any adjoining timber over their land by tram road or otherwise."

Does the deed convey the maple and chestnut timber? It is not properly susceptible of a construction that makes it say that it does. There is a particular description of the timber meant to be conveyed, in the granting clause of the deed. Was that particularity, in the very clause that was intended to grant the estate, entered into for naught? Why particularize so

specifically as to certain kinds of timber, if all this was to be wiped out at the end of the deed? Can we reasonably say that the grantor meant nothing by this definite and carefully stated enumeration of species of timber? His words in this particular must be given effect if it is possible to do so. We cannot erase them from the deed lightly. There must be clear intent expressed by the deed as a whole that the particularization was for no purpose before we can ignore it. Because of the very particularity, and its position in the deed in connection with the words of grant, it is entitled to more consideration than to be lightly annihilated. For what purpose was this particularization entered into? The answer naturally is: To show what kinds of timber the grantor conveyed. Why name specific kinds of timber as carried by this conveyance if it was not to distinguish those named from those not named and not intended to pass by the deed?

It is by no means a new rule to give such a particular description as we have in this deed great weight as indicating the intention of the grantor. "A particular description which is clear and explicit and is a complete identification of the property intended to be conveyed will not be varied or enlarged by a more general and less definite description, as in such a case the former would be considered as expressing the intent of the parties rather than the latter." 13 Cyc. 631. Yet defendants contend that the last paragraph of the deed made by plaintiff, notwithstanding the general terms used therein, strikes down all the defined enumeration and studied identification of the granting clause. It does not do so. If it did the words of identification in the granting clause would be wholly ineffectual. By an admitted rule of construction every part of a deed must be given effect if that can be done. In the deed before us, the general clause can stand and have a purpose consistent with the force of the particular identification in the granting clause, but the words used in the granting clause cannot stand as they do if the general clause is taken as the description of the property conveyed. Therefore we must hold that the particular description of the granting clause is that which names the property passed by the deed. But what office do the words in the general clause perform? In view of the particularity of the granting

clause, they must have been intended to refer to the bounds of the land from which the particularly stated timber could be taken. It must be observed that the general clause does not say "all timber on said land." That clause says, "all the timber included in said bounds." The words "included in said bounds" are indeed more full of meaning in the connection in which they are used than the words "all the timber," for the latter words are qualified by the identification of timber in the granting clause. The latter words, "all the timber," are general ones, and apply to things of the same kind as those specifically named. The timber meant in this general clause is timber of the kinds specifically named and dealt with in the deed. "General words apply *prima facie* only to things *ejusdem generis* with those specifically enumerated." *Crampton* v. *Jarrett,* 30 C. D. 298; *In the matter of Wright,* 15 Beav. 367.

When the deed was introduced at the trial by defendants, in support of their contention that they owned the chestnut and maple as well as the other timber, plaintiff sought to show that the deed had been altered after its due execution and delivery by an erasure of the words "above named". He claims that these words were interlined immediately after the words "bounds" in the last paragraph of the deed when he and his wife signed and acknowledged the instrument. He introduced evidence tending to show the alleged erasure, and defendants offered some in rebuttal thereof. It seems unnecessary, however, to deal with the matter of this alleged alteration. Since the deed when properly construed means the same without the words alleged to have been erased as it would with them, the whole matter was an immaterial issue in the case. The trial court should have construed the deed and directed the jury accordingly. Instead of so doing, the court improperly submitted to the jury the question as to what the deed meant on its face, allowed improper parol testimony in relation thereto, and, at plaintiff's request, gave an erroneous instruction in the premises. An instruction for plaintiff relative to the alleged alteration was also erroneously given. However, as the finding of the jury is in accord with the true meaning of the deed in any event, all this erroneous procedure is indeed harmless to defendants. Errors committed in relation to the immaterial issue about the

alleged alteration, or in relation to the method of interpreting the deed, do not injure defendants, for the same finding that was reached against them irregularly must have been reached by proper procedure. This view eliminates all the assignments of error but the one in relation to the refusal of the instruction which we shall now consider.

Defendants requested an instruction to the jury that the measure of damages plaintiff was entitled to recover, if entitled at all, was the actual market value of the timber on the stump at the time it was cut and removed, and that plaintiff was not entitled to recover punitive or exemplary damages in the case. The court refused so to instruct. The refused instruction correctly propounded law applicable to the case made. The refusal to give it was error. The market value of the timber was a proper measure of damages under the circumstances appearing as to the trespass and in view of the character of the timber. There is no showing that it was growing timber of peculiar or special value. In this jurisdiction, market value of growing timber destroyed has usually been sanctioned as a measure of the damages suffered by its destruction. *Stewart* v. *Railroad Co.,* 33 W. Va. 88. Whether that measure should apply to all cases we need not inquire. The measure of the market value on the stump seems justly applicable to the case at hand. The part of the instruction relating to punitive or exemplary damages was warranted. No wanton or wilful trespass was proved, and the case was clearly one for compensatory damages only. Plaintiff introduced no evidence in relation to the market value. Defendant proved a sum much less than that which the jury found. So it is evident that the jury either applied an inappropriate measure of damages or awarded exemplary damages. The judgment must be reversed, the verdict set aside, and a new trial awarded.

*Reversed.*