# CHARLESTON

JOPLING *v.* BLUEFIELD WATER WORKS & IMPROVEMENT CO.

Submitted September 9, 1911.   Decided April 16, 1912.

1.   WATERS AND WATER COURSES—*Public Water Supply—Contracts —Construction.*

The rules of a water works company, adopted for the government of its relations with its patrons, do not become parts of a contract between it and a patron, made in terms and upon con-

ditions not contemplated by such rules and regulations, and radically different therefrom. (p. 672).

2.  SAME.
    Such rules and regulations, to be applicable and effective, must enter into the contract by express or implied adoption at its inception. They cannot be engrafted upon a contract, complete in itself and independent of them, except by the assent of both parties. (p. 673).

3.  DAMAGES—*Exemplary Damages.*
    To sustain a claim for punitive damages the wrongful act must have been done maliciously, wantonly, mischievously or with criminal indifference to civil obligations. A wrongful act done under a *bona fide* claim of right and without malice in any form constitutes no basis for such damages. (p. 673).

Error to Circuit Court, Mercer County.

Action by T. C. Jopling against the Bluefield Waterworks & Improvement Company. Judgment for plaintiff, and defendant brings error.

*Reversed.    Remanded.*

*Sanders & Crockett,* for plaintiff in error.

*Ross & Kahle,* and *D. E. French,* for defendant in error.

POFFENBARGER, JUDGE:

On this writ of error, to a judgment against a water works company for damages for cutting the water off from plaintiff's store room, justification of the act complained of is asserted on the one side and denied on the other, in the arguments to overthrow and sustain the verdict, on the ground of sufficiency and insufficiency of the evidence, and as the basis for contentions respecting the propriety of rulings on instructions. Assuming the act to have been done without right, the motive of the defendant becomes an important inquiry in passing upon instructions, respecting the award of punitive damages.

The plaintiff occupying the ground floor of a certain building had contracted with the defendant for a supply of water and paid the rent therefor in advance, as required by a rule of the company. Another tenant, having taken up his residence on the second floor of the same building and refused to pay the water

rent in accordance with the rule, the defendant cut off all the water from the building, whereupon this action was brought. The single service pipe, passing through the ground floor and on up to the second was equipped with a cut-off, just above the spigot used by the ground floor tenant, and he gave the defendant permission to enter the room and there cut the water off from the second floor, but the appliance was such that any person could have turned the water on again without the knowledge of the company. Accordingly it refused to turn it off there and continue the supply to the lower room, but offered to continue it, if the pipe should be disconnected above the spigot. This was not done, by either the tenant or the owner, and the water was cut off agreeably to notice of intent to do so, after demand for the rental from both tenant of the ground floor and the owner of the building.

The company's rules 1, 8 and 22 are relied upon for justification of the act complained of, as being reasonably within the legal definition of the term, and as having entered into and become a part of the contract. Rule 1 required the owner of the property in every case to sign a permit subject to the rules of the company. Rule 8 reserved right to render the bill to the owner of the property for the entire supply of water thereto, in case of occupancy by more than one person and consumption of water by all through a single tap, and to look to the owner for the entire rent for all water used in the building, and gave notice of intention not to attempt to collect rent from tenants, unless hydrants and pipes should be so arranged and supplied with stop keys as to give the agents of the company perfect and absolute control over the supply to each individual at all times, and then to shut off the water from all, if any refused to pay. Rule 22 required all flat rate rentals to be paid three months in advance, and all meter rentals within one month after the rendition of the service, and reserved the right to cut off the water for non-compliance.

As the contract here involved was made with a single tenant and not with the owner of the building, as contemplated by the rules, the position assumed for the plaintiff in error is untenable. There was no contract with the owner, no written contract with anybody, nor an agreement by any person to pay for water fur-

nished to persons other than himself.   The plaintiff may have had knowledge of the company's rules.   Conceding this, he knew equally well the company could make a special contract with him.   His money had been accepted and the water furnished. If the agent who made the special contract had no authority to make it, restoration of the money or a portion of it equal to the unearned rental was a condition precedent to release from its obligation, and it was neither refunded nor tendered.   To say these rules became a part of the contract under the circumstances, would permit them to be used for a purpose wholly different from that for which they were made and promulgated. They require the owner to obtain a permit and agree to be liable for all rentals accruing against his tenants.   The owner might be willing thus to bind himself for some tenants, but not for others, and he has the right to assume, in case water is furnished to his tenant, without such an agreement, that the company looks to the tenant for the rental.   To begin a supply of water, under such circumstances, and then attempt to apply and enforce the rule, works surprise, injustice and hardship.   The rules do not contemplate action of that sort.   If they are so burdensome upon property owners, or so inconvenient to the company, as to create confusion or make trouble in their application and enforcement, the remedy is a revision of the rules, not to put in water without any reference to them and then attempt to apply them.   As the contract here involved was a separate, single and complete contract, not within nor under the rules, breach thereof by the company is clear, and the rules are not at all involved.   Hence there is no occasion to say whether they are reasonable and such as the company could lawfully prescribe and enforce.

The jury found a verdict for $126.00, reciting an allowance of $1.00 for actual damages and $125.00 for punitive damages. This finding and two instructions given by the court, over the objection of the defendant, on the subject of punitive damages, necessitate inquiry as to whether any evidence justifying a verdict for such damages was adduced.   One of these instructions authorized the finding of such damages, if the jury should believe the action of the company was wilful, wanton or in reckless disregard of the rights of the plaintiff; and the other in-

structed them not to find such damages unless defendant's action was malicious, oppressive, wanton or wilful or its conduct reckless. There is no evidence of any violence or reprehensible conduct on the part of the defendant. It merely demanded from the plaintiff and the owner of the property the payment of rental in advance for water to be supplied to Johnson, tenant of the second floor, who had refused to pay, declining further to furnish water for the first floor with the water cut off from the second, as proposed by the plaintiff, and then cut off the water from the building. Nothing in the evidence indicates the action of the company was oppressive in any peculiar sense. Ample opportunity had been given the plaintiff to secure water by paying a small amount for a short time that it did not justly owe and for the benefit of a third party. Had he paid this, he would no doubt have been entitled to recover it back. On the whole, the evidence indicates nothing more than a purpose on the part of the company to test the validity of its claim of the right, under the circumstances of the case, to compel such payment as it demanded or to cut off the water on refusal thereof. Nothing indicates any intent beyond this. In other words, nothing indicates intention to cut off the water merely to injure the plaintiff, or to enforce a right and also injure the plaintiff otherwise than incidentally. The sole purpose was the assertion of a claim of right on the part of the defendant. Under such circumstances, there is no right to a verdict for exemplary or punitive damages. To justify the recovery of such damages, there must be evidence in some form of malice. It may consist of abusive language, violence, invasion of another's right with knowledge thereof or some other circumstance from which malice can be implied. *Fink* v. *Thomas,* 66 W. Va. 487, states the rule as follows in an action for assault and battery: "In an action for assault and battery punitive damages cannot be found unless the act is unjustifiable, wilful, wanton and reckless, manifesting malice." The Court has thus stated the principle or basis of the allowance of such damages. In the opinion in that case, Judge BRANNON said: "All the books say that to warrant punitive damages there must be malice, oppression, or wanton, wilful and reckless conduct. * * * * There must be fraud, malice, oppression or wanton, wilful or reckless

conduct or criminal indifference to civil obligations." All the decisions of this Court on the subject are to the same effect. Pollock on Torts, pp. 185-186, marks the distinction. This author says punitive damages are such as are intended to express indignation at the defendant's wrong, and then proceeds as follows: "Damages awarded on this principle are called exemplary or vindictive. The kind of wrongs to which they are applicable are those which, besides the violation of a right or the actual damages, import insult or outrage, and so are not merely injuries but *injuariae* in the strictest Roman sense of the term." He then quotes the following as indicating the basis of such damages from *Railroad Co.* v. *Arms,* 91 U. S. 489: "The tort is aggravated by the evil motive." Cooley on Torts, (3 ed.) p. 1511, marks the distinction thus: "Motive generally becomes important only when the damages for a wrong are to be estimated. It then comes in as an element of mitigation or aggravation, and is of the highest importance." Numerous cases cited amply sustain the text. In most of the opinions delivered by courts and the text books, the limits of the rule are defined by the principle of inclusion, stating what conduct will authorize recovery of such damages. In *Railroad Co.* v. *Prentice,* 147 U. S. 101, the Court went beyond this and applied the principle of exclusion, saying: "In this court the doctrine is well settled that in actions of tort the jury, in addition to the sum awarded by way of compensation for the plaintiff's injury, may award exemplary, punitive or vindictive damages, sometimes called 'smart money,' if the defendant has acted wantonly or oppresively or with such malice as implies a spirit of mischief or criminal indifference to civil obligations. But such guilty intention on the part of the defendant is required in order to charge him with exemplary or punitive damages." In *Railroad Co.* v. *Quigley,* 21 How. (U. S.) 202, a verdict was set aside for allowance of exemplary damages in the absence of malice, and the court said: "Whenever the injury complained of has been inflicted maliciously or wantonly, and with circumstances of contumely or indignity, the jury are not limited to the ascertainment of a simple compensation for the wrong committed against the aggrieved person. But the malice spoken of in this rule is not merely the doing of an unlawful or injurious act.

The word implies that the act complained of was conceived in the spirit of mischief, or of criminal indifference to civil obligations." Suth. on Dam., secs. 393-393, reviewing the whole subject, shows the weight of authority to be in accord with these decisions as well as those of our own court. As there was no evidence of malice or intent to bring injury upon the plaintiff beyond what was necessarily incident to the assertion of the claim of right in good faith, it was improper to give any instruction on the subject of exemplary damages, other than one inhibiting the finding of any.

A peremptory instruction to find for the defendant was properly refused for reasons stated. Instructions Nos. 2, 3, 4, 5 and 10, predicating defense upon the rules of the company, were also properly refused, since the rules are in no way involved. Instructions Nos. 6 and 7 limiting the right of recovery to actual damages should have been given and the court erred in refusing them. Instruction No. 9 limiting recovery to One Dollar was properly refused, and the court erred in giving instruction No. 8 limiting the recovery to One Dollar for actual damages. The quantum of damage is a question for the jury, not for the court.

For the errors noted, the judgment will be reversed and the cause remanded for a new trial.

*Reversed and Remanded.*