# CHARLESTON.

GEORGE v. NORFOLK & WESTERN RAILWAY CO. *et al.*

Submitted April 17, 1917.    Decided April 24, 1917.

1. FALSE IMPRISONMENT—*Action—Question for Jury.*

Where by uncontradicted evidence, in an action for false imprisonment, it appears that the arrest complained of was unlawful because made by defendant, without a warrant, for a misdemeanor not committed in his presence, it is not error by instruction to withdraw from the jury the question of liability upon the cause of action averred in the declaration. (p. 318).

2. SAME—*Action for Damages—Excessive Damages.*

In such action, where the proceedings involved in the unlawful arrest of plaintiff and his conviction before a police magistrate occupy only a few minutes, terminating in his discharge on payment of a fine of $10, and the proceedings are devoid of any unusual aggravating circumstances and are not prompted by actual malice on the part of defendant, and the evidence tends strongly to show the guilt of plaintiff on the charge preferred and disorderly conduct on his part at the time of the arrest, a verdict for $3000, in the absence of a showing of substantial pecuniary loss, is excessive and ground for reversal upon writ of error. (p. 321).

Error to Circuit Court, Mercer County.

Action by C. C. George against the Norfolk & Western Railway Company and others. Judgment for plaintiff, and defendants bring error.

*Reversed, verdict set aside, remanded.*

*John M. McGrath* and *A. W. Reynolds,* for plaintiffs in error.

*Thomas H. Scott, A. G. Fox* and *Sanders & Crockett,* for defendant in error.

Lynch, President:

Upon this writ of error, the second one granted defendants, the opinion in the first of which being reported in 88 S. E. 1036, we are called upon to determine the correctness of the only instruction given for plaintiff, the refusal to give any of the eight instructions requested by defendants except numbers five and six, and the alleged excessiveness of the damages returned by the jury.

Apparently, the main objection urged against the instruction given for plaintiff is that it deprived the jury of the right to determine the question of liability, upon evidence which defendants claim to be conflicting. Upon the main issue, the facts proved on the two trials do not differ in their essential features. The proof in the second virtually is a repetition of that produced upon the first trial. And the only fair construction of the facts proved leaves no room for doubt that Worley arrested plaintiff at the instance and upon the request of Jaffee, and that Jaffee's ultimate object and real motive in procuring the arrest, at least one of its immediate results, was the collection of the purchase price or value of six quarts of whisky and one quart of alcohol, which he had theretofore placed in the custody of plaintiff for delivery at Cohen's in the city of Bluefield. The delivery, if made, would have been a violation of the laws of this state. But the intoxicants did not reach the intended destination. Plaintiff and his friends consumed them, either at Graham in Virginia or at his home in Bluefield. This breach of faith gave rise to the incidents which furnish the foundation for this action.

The manner of effecting the arrest and what occurred thereafter are involved in conflict. If to plaintiff's testimony the jury gave full credit, as clearly it must have done, the apprehension and temporary confinement of the plaintiff in the depot building, of which Worley had charge as the

representative of his co-defendant, must have been attended with some degree of violence. It shows that Worley grabbed him and shoved him through the door into the baggage room, fastened the door, and required plaintiff to hold up his hands while he was searched to ascertain whether he had a dangerous weapon about his person. Worley explains what was done in that connection by saying that, while engaged in the discharge of the duties he owed to the railway company, he observed that plaintiff and Jaffee, then were engaged in a quarrel in the station yard concerning the failure to deliver the whiskey as agreed; that George used profane and vulgar language, Jaffee demanding and George refusing payment; and that Worley requested plaintiff to step into the baggage room to prevent any further altercation between them. Worley denied that he searched the plaintiff, or fastened the door, or refused him permission to leave the room if he chose to do so. But he admits that later, at the request of Jaffee, he restrained the plaintiff of his liberty, and delivered him to an officer of the town of Pocahontas, who, as the uncontradicted proof shows, took him before the police judge for trial upon a warrant, later issued, charging a larceny of the intoxicants.

This conflict of testimony forms the basis of the argument that the instruction wrongfully withdrew from the jury the determination of the actual liability of the defendants upon the cause of action averred in the declaration. That plaintiff was arrested by Worley, and that the arrest was unlawful, no doubt can exist. It was made without a warrant, for a misdemeanor not committed in the presence of any officer having authority to cause the apprehension of persons accused of minor offenses without a warrant therefor. It clearly was not for disorderly conduct at the station. As held in the former opinion, the unlawfulness of the arrest constitutes the basis of the recovery which is the object of the action. It was an invasion of a personal right. The chief, indeed the only substantial difference in the proof adduced upon the two trials is the admission in the second of evidence in mitigation of damages excluded in the first, and which constituted the chief ground for the re-

.versal. It can not, therefore, reasonably be said that the instruction improperly withdrew. from the jury the question of liability. It was one for the court to determine.

For the same reason, defendants' instruction number one was refused properly, since it relates only to the preponderance of the evidence. As to the main fact averred, the arrest, the evidence is conclusive. Instructions numbers two and three, if given, would have told the jury to find for defendants if it should believe from the evidence that Worley did not by force or threats impose an unlawful restraint upon the plaintiff, did not put his hands upon or touch the plaintiff, or force or push him into the baggage room, did not search him or tell him he was under arrest, or lock or fasten the door, and that George voluntarily entered the room and remained therein without being restrained. That conclusion would not necessarily follow; because, as held in the former opinion, and as the unversal rule is, an illegal and wrongful arrest, which may be made in the absence of such circumstances, in itself warrants the award of nominal damages at the least. See also *Williamson* v. *Coal Co.,* 72 W. Va. 288; *Howell* v. *Wysor,* 74 W. Va. 590. Nor did the facts stated in instructions four, seven and eight warrant the direction contained therein to find for defendants, if while drunk plaintiff was disorderly and used profane language in the presence of Worley, who was a special policeman of the town of Pocahontas, or if George was guilty of larceny of the whiskey in Virginia. It was not a matter of concern to defendants what disposition was made of the intoxicants, the delivery of which in this state would have been in violation of chapter 32a of the Code. And, conceding the dual official character of Worley, as agent of the defendant railway company and as a police officer of Pocahontas, we observe again, what is made clear because not contradicted, that he did not arrest the plaintiff because disorderly while on the station platform—a fact confirmed by several witnesses, though denied by plaintiff. Besides, Worley's first duty was to afford protection to passengers about to enter upon the train then present at the station, and for passage on which the plaintiff had purchased a ticket only a few minutes be-

fore the departure of the train for his destination. Worley, although a police officer of Pocahontas, had no authority in either capacity to cause an arrest, without a warrant, or place restraint upon any person for an offense constituting a mere misdemeanor, when not committed in his presence.

The only other question of any controlling influence or effect upon the merits of the case, the one as to which little if any doubt can exist, is as to the *quantum* of the damages ascertained and fixed by the jury. That plaintiff was entitled to some compensation for the indignity imposed by the restraint effected through the instrumentality of Worley, coupled with that necessarily resulting from the consequences of his unlawful intrusion into a dispute about a matter that did not in anywise affect the due performance of the duties assigned to him by his co-defendant, including the usual contingent of men and boys whose curiosity apparently impels them to follow in the wake of a procession to the place of trial of a person under arrest, can not be gainsaid. That right was settled upon the former hearing, and is the law of this case. There is some controversy whether plaintiff confessed to the charge of larceny contained in a warrant sworn out after he reached the office of the police judge, and whether he was denied the right of a trial at that time. Those who were present, including the police judge, agree in saying he did confess that he appropriated the whiskey to his own use and therefore did not deliver it as he agreed, and that he did not demand a trial. But he not only paid the fine then assessed against him, but also the value of the liquor appropriated by him, which seems to have formed part. of the judgment, and the costs attendant upon his arrest and conviction, without protest or complaint and without demanding an appeal from the judgment rendered against him. These facts, coupled with his admission that he violated the agreement to deliver to Cohen the package entrusted to him, tend strongly to support the statement that he confessed to the larceny charge preferred by the warrant. Plaintiff then was and perhaps still is a resident of the city of Bluefield. He admitted he had no business that demanded his presence in Pocahontas on the day of the arrest, and that

the only business he transacted while there was the purchase of intoxicants at different saloons and of a return ticket in the interval between his arrival in Pocahontas and the arrest, a period of about an hour and thirty minutes.

Can it be said that under these circumstances and conditions, the brief duration of the detention, the virtual admission of the embezzlement of the liquors, the frequent drafts of intoxicants, ignoring the proof as to his disorderly conduct confirmed by several witnesses, plaintiff was entitled to a verdict and judgment for $3000? He was entitled to some damages, it is true; and it was the right of the jury to fix the amount. But the amount fixed certainly exceeds any legitimate compensation for the wrongs suffered in consequence of the unlawful acts of the defendants. Great liberality, of course, must necessarily be allowed to juries in estimating damages for injuries unlawfully inflicted. Yet justice and fairness require the imposition of reasonable restraint upon the exercise of this right. The rule of reason should always prevail. The only reasonable view is that the sum awarded was intended for the most part to be punitory. It can be accounted for only upon that theory. But as to damages of that character a jury must keep within reasonable limits. It can not be permitted to fix an amount grossly disproportionate to the wrongs for which redress is sought. Of course there is no standard prescribed for the admeasurement by which to test the fairness or unfairness of a verdict for exemplary damages; and while originally courts hesitated to interfere with such verdicts except where they were glaringly outrageous, yet now it is held generally that a jury can not be permitted unrestrained to award damages in any amount they wish, regardless of the facts upon which it is predicated. 8 R. C. L. 680. In somewhat similar circumstances the supreme court of Minnesota in *Woodward* v. *Glidden*, 38 Minn. 108, held excessive a verdict for $2917 in an action for false imprisonment. In *Turk* v. *Railway Co.*, 75 W. Va. 623, where the facts proved were highly aggravating, indeed inexcusable on any theory, a greatly reduced recovery was allowed. For a collection of cases granting new trials on acount of excessive damages for false im-

prisonment, see Ann. Cas. 1916C 506; 8 R. C. L. 586. Where it appears, as we think it does in the instant case, that the verdict did not result from that cautious exercise of a deliberate and honest judgment which ought to obtain in a court of justice—a judgment unmoved by passion or prejudice or some improper sympathy or a desire to oppress—it is the right and consequently the duty of courts to grant a new trial to afford an opportunity to correct the wrong so inflicted. One wrong can not justly be repaired by the commission of another, even though it result ostensibly under the forms of law and the sanction of legal procedure. . To justify such an assessment, the acts complained of must have been done with malice or wantonness or oppressive circumstances. But in no event may it be disproportionate to the injury and in utter disregard of the salutary results to be accomplished. The amount returned by the first jury, composed as doubtless it was of men of equally sound judgment, prudence and discretion, was we think large enough to meet all requirements. That sum was only $1,000, while the verdict now challenged is three times that amount.

Among the reasons assigned for permitting the recovery of exemplary damages are that they are necessary for the enhancement of the recovery where the ordinary damages allowable are inadaquate on account of malicious or oppressive character of the acts of which complaint is made, or that such enhancement will serve to deter others from engaging in like offensive conduct, or as proof of the public detestation of the act itself, or as a solace to injured feelings arising from the malice prompting the injury. · But the authorities are uniform in holding that actual malice or wantonness, or circumstances warranting the inference of malice or wanton intention to wrong another, must be proved as a prerequisite and necessary element for the allowance of such damages. 8 R. C. L. 586 and numerous citations, including *Pressline* v. *Shepperson*, 17 Gratt. 472. As affirming the same doctrine, but not so cited, are *Davis* v. *Railway. Co.*, 61 W. Va. 246; *Jopling* v. *Bluefield Water Works Co.*, 70 W. Va. 670; *Mayor* v. *Frobe*, 40 W. Va. 246; *Stevens* v. *Friedman,* 58 W. Va. 78; Sutherland on Damages (4th

Ed.) §§391, 1258. In §394 of the work last cited it is said that in some circumstances malice may be implied from the act done and the manner of doing it.

Accepting as true the statements of the plaintiff as a witness in his own behalf upon the second trial of the case in detailing the acts of the defendant Worley, what the latter did in effect constituted an assault and battery upon the person of the plaintiff. "In an action for assault and battery punitive damages can not be found unless the act is unjustifiable, willful, wanton and reckless, manifesting malice". *Fink* v. *Thomas*, 66 W. Va. 487. "Motive generally becomes important only when the damages for a wrong are to be estimated. It then comes in as an element of mitigation or aggravation, and is of the highest importance". Cooley on Torts (3rd Ed.) 1511. "But the malice spoken of in this rule is not merely the doing of an unlawful or injurious act; the word implies that the act complained of was conceived in the spirit of mischief or of criminal indifference to civil obligations". *Railway Co.* v. *Quigley*, 21 How. 202; Sutherland on Damages, §§393 *et seq.*

Clearly, no actual malice in the legal sense appears in the conduct of Worley, because no basis therefor is shown by the proof. He had not seen plaintiff theretofore. They were strangers. Neither knew the other prior to the occurrence, and no dealings had taken place between them; and doubtless but for the demonstrative altercation that occurred upon the station platform Worley would not have taken any part in the detention of the plaintiff. His duty to the public and to his co-defendant required him to interfere, if it be true that plaintiff and Jaffee were indulging in loud and boisterous conduct. Nothing tends even in the remotest degree to show that Worley then had any knowledge of the theft or embezzlement charged against the plaintiff. He became cognizant of that charge for the first time when on the platform during the colloquy between the plaintiff and Jaffee. These facts are not cited to justify what was done at that time by Worley, but as a verification of the statement that he was not prompted by actual malice against the plaintiff. It was the unlawfulness of what he did, and the manner of accom-

plishing the detention and the purpose for which it was done, that serve as the basis for the inference that his acts resulted from unjustifiable motives. And while they were sufficient to warrant the conclusion on the part of the jury that plaintiff was entitled to recover damages against both defendants, we think it is clear that the amount of the recovery was wholly disproportionate to the injury actually done, viewed in the light of all the facts and circumstances disclosed by the record.

For this reason, we reverse the judgment, set aside the verdict, and remand the case for new trial.

*Reversed, verdict set aside, remanded.*