Leon T. Addair

*v.*

J. E. Huffman

(No. 13142)

Submitted January 30, 1973.     Decided April 10, 1973.

Dissenting Opinion April 10, 1973.

D. *Grove Moler*, for appellant.

*Camper & Watson, Harry G. Camper, Jr.*, for appellee.

NEELY, JUDGE:

This is an appeal by the defendant below from a final order of the Circuit Court of McDowell County entered upon a jury verdict for the plaintiff for $2,250. Plaintiff, Leon T. Addair, was awarded $250 compensatory damages and, after a remittitur of $500, $1,500 punitive damages. The action was in tort arising from an alleged wrongful suggestee execution issued against plaintiff Addair's wages. The primary issue before this Court is whether from the actions of the defendant J. E. Huffman, who owned a collection agency known as Huffman's Account Service Company, a jury could imply sufficient malice to sustain punitive damages or whether the defendant's behavior amounted merely to simple negligence.

In 1962 and 1963 plaintiff incurred debts to the Stevens Clinic Hospital for medical services in the sum of $133.09; however, $127 was paid by the Department of Welfare. By September 1963 plaintiff had not paid the balance of $6.09, and in accordance with a contract between Stevens Clinic and the defendant, the account was automatically transferred to defendant for collection. Defendant was to receive fifty percent of the amount collected. However, upon transfer of the account, the defendant erroneously entered an amount of $66.09 on his records, rather than the correct amount of $6.09. On March 2, 1964 plaintiff paid Stevens $2 and on January 7, 1967 plaintiff paid Stevens $4, thereby extinguishing the debt.

After sending several unanswered dunning letters in 1964, defendant instituted an action on March 11, 1966 through Justice of the Peace W. S. Kirkpatrick. A summons was issued in the name of Stevens Clinic Hospital for the sum of $75.63, representing the $64.09 of debt and $11.54 court costs. The summons was returnable March 22, 1966. Addair failed to appear, and a default judgment was entered against him for $77.63 on this return date.

On January 18, 1967 Stevens Clinic notified the defendant that the plaintiff's account was satisfied in full, and that the amount of the debt had been erroneously stated. Defendant maintained that after he was informed by the clinic that the account was satisfied, he telephoned Squire Kirkpatrick and told him that the account was closed. However, on June 20, 1968, seventeen months after the defendant allegedly notified the squire that the account was closed, Squire Kirkpatrick, allegedly in accord with his customary practice in the defendant's collection cases, issued a suggestee execution on the judgment against the plaintiff.

When the plaintiff Addair testified at trial, he denied receiving the dunning letters. He also denied receiving the summons which was returnable on March 22, 1966, and alleged his lack of notice as the cause of his failure to appear. Squire Kirkpatrick died after the issuance of the suggestee execution, and there is no documentary evidence of proper return of service. The squire's docket incorrectly indicates that Addair appeared by his attorney and presented evidence, but the defendant acknowledged that there was no appearance by anyone on behalf of Addair. Plaintiff Addair also testified that he first learned about the suggestee execution when he received his pay on July 12, 1968, and at that time he informed Squire Kirkpatrick that his account with Stevens Clinic was fully satisfied, but that Squire Kirkpatrick continued to permit a portion of plaintiff's wages to be withheld until the full judgment amount was collected. The squire then offered to return all of the money wrongfully withheld.

Other evidence in the case shows that the following irregularities occurred in the proceedings of the Justice of the Peace Court. Chapter 50, Article 17, Section 1 of the *Code of West Virginia,* 1931, as amended, requires that "[a] justice of the peace shall charge and collect in advance . . . fees" for entering and trying a civil suit and other services, yet these fees were not charged or collected in advance. Chapter 50, Article 13, Section 3 of the *Code of West Virginia,* 1931, provides: "When a

defendant does not appear, the plaintiff cannot recover without proving his case." In this case, when Leon Addair failed to appear in response to the summons returnable on March 22, 1966, defendant Huffman made no personal appearance in court and did not prove his case, but nonetheless, judgment was entered. Chapter 50, Article 4, Section 17 of the *Code of West Virginia,* 1931, provides that the basis upon which a judgment is entered is an affidavit stating that there is due and unpaid a sum certain, yet judgment was entered without this affidavit from the hospital or the defendant.

Chapter 50, Article 13, Section 13 of the *Code of West Virginia,* 1931, provides:

> "On a suggestion by a judgment creditor, verified by affidavit, to the justice who rendered the judgment, or his successor, that any person, whether in the same or another county, has personal property of the judgment debtor in his possession or control, not exempt by law from execution, or is liable to the debtor in any sum of money, whether then due and payable, or thereafter to become so, not exempt from the lien of an execution, the justice shall order such person and the judgment debtor to appear before him, at the time and place specified in such order, and answer, under oath, respecting such property and liability; and may also subpoena witnesses to testify concerning the same."

Squire Kirkpatrick initiated the suggestion proceedings and not the judgment creditor. Neither the judgment debtor, Leon Addair, nor the property holder, Leon Addair's employer, was ordered to appear before Squire Kirkpatrick, yet the suggestee execution took effect.

In accord with the evidence presented at trial plaintiff's jury instruction No. 4 was given. The first paragraph of plaintiff's jury instruction No. 4 is a correct instruction under the evidence in this case and is not challenged by defendant Huffman. It stated:

> "The Court instructs the jury that if you find by a preponderance of evidence in this case

that the defendant, Huffman Account Service Company, was negligent, and that said negligence was a proximate cause of the plaintiff's wages being garnisheed, or that the defendant, Huffman Account Service Company, was concurrently negligent with others, which negligence proximately caused the plaintiff's wages to be garnisheed and withheld, then you shall return a verdict for the plaintiff, Leon Addair, and assess his damages at a sum which you feel would justly and fairly compensate him for the damages sustained by him. In awarding compensatory damages, you may consider the plaintiff's loss of use of the money withheld until it was offered back to him, loss of work, if any, and the amount of money actually withheld from plaintiff's pay."

Whether the defendant was negligent in not maintaining accurate collection records, and by allegedly informing the squire of plaintiff's satisfaction of his account by telephone rather than by personal visit or by letter, and whether defendant was further negligent by not verifying that all proceedings against plaintiff were discontinued, were proper questions for the jury. The verdict indicates that these questions were answered in favor of the plaintiff.

The second paragraph of plaintiff's jury instruction No. 4, which pertains to additional compensatory damages, and the entire plaintiff's jury instruction No. 5, which pertains to punitive damages, are challenged by the defendant. Paragraph 2 of plaintiff's instruction No. 4 said:

"You are further instructed that if you find by a preponderance of the evidence that the defendant either knew that the plaintiff did not owe the debt for which he was garnisheed or was so reckless as to show utter disregard whether the plaintiff owed the debt or not, then you may infer malice from said conduct. In the event that you find by a preponderance of the evidence that the defendant is guilty of conduct amounting to malice by either intentionally or wantonly and recklessly disregarding the rights of the plaintiff, then you may take into consideration

the inconvenience, aggravation and injury to the plaintiff's feelings, if any, in making your award of compensatory damages.

> "Brown v. Guaranty Estate Corp., 80 SE (2d) 645 (North Carolina)."

Plaintiff's instruction No. 5 said:

> "The court further instructs the jury that in the event you find the plaintiff entitled to recover compensatory damages from the defendant, then you may further, in your discretion, consider whether, under the evidence, this is a case in which exemplary or punitive damages are proper to be allowed the plaintiff. And if the jury find by a preponderance of the evidence that the defendant wilfully and wantonly, or in a wilfull, reckless indifference and disregard of the plaintiff's rights, caused the plaintiff's wages to be garnisheed and his wages thereby withheld and taken when he did not owe the same, then you may, in your discretion, allow punitive damages to the plaintiff for such an amount as taken together with the actual damages will be sufficient to punish the defendant and deter him and others from committing like actions or engaging in a like course of conduct.

> "If the jury in its discretion finds that this is a proper case to allow punitive damages, then the jury is further instructed that in considering such an amount for the award, the punitive damages must bear a reasonable proportion to the compensatory damages."

Additional compensatory damages, as provided for in plaintiff's instruction No. 4, paragraph 2 are permissible when the tort is intentional. In *Jones v. Hebdo,* 88 W.Va. 386, 106 S.E. 898 (1921) the Court sustained the principle that where there is malice, compensatory damages will be given for mental pain and suffering, insult, indignity, and humiliation inflicted. In that case plaintiff was wrongfully arrested and detained on a train trip so that defendant could help his nephew capture plaintiff's seventeen year old daughter, who had married the

nephew. The Court permitted recovery of special damages for expenses incurred, compensatory damages for mental anguish, and further punitive damages if both types of compensatory damages were insufficient to punish the defendant adequately. Also, for a general discussion of this principle see *Toler v. Cassinelli,* 129 W.Va. 591, 41 S.E.2d 672 (1946).

In an appropriate case plaintiff's instruction No. 5 is a correct statement of law. The weight of West Virginia precedent is that where there is an intentional wrong, or where there are circumstances which warrant an inference of malice, willfulness, or wanton disregard of the rights of others, punitive damages may be awarded. *George v. Norfolk & Western Railway Co.,* 80 W.Va. 317, 92 S.E. 430 (1917). Punitive damages must bear a reasonable proportion to the compensatory damages assessed, *Spencer v. Steinbrecher,* 152 W.Va. 490, 164 S.E.2d 710 (1968).

Defendant's primary assignment of error therefore, is that the evidence presented at trial is inapplicable to the instructions. Defendant asserts that the evidence does not support a finding of conscious, willful, intentional, and knowing wantonness on the part of the defendant, and that simple or even gross negligence will not sustain punitive damages. The defendant further contends that if there is evidence of any reckless, willful, or wanton disregard of plaintiff's rights, such action is attributable to Squire Kirkpatrick and not the defendant.

The jury had the following evidence before it from which we can sustain an inference of malice or wanton disregard of plaintiff's rights. The defendant had been in the business of collecting debts for others for twenty-five years. He therefore was familiar with legal procedures in collections. For some time before the beginning of the action against Addair, the defendant exclusively used Squire Kirkpatrick as the justice of the peace for his collection efforts in McDowell County. With the recitation

of the *Code* violations before the jury, as discussed *supra*, the jury could conclude that the defendant and the squire had an unlawful on-going arrangement. This on-going arrangement inured to the benefit of both individuals; the squire obtained fees for all of the defendant's collection efforts and the defendant could rely upon the squire to continue collection efforts with a minimum of defendant's participation once the defendant initiated the proceedings. This relationship had many of the elements of an agency relationship, a joint-venture, and a conspiracy. The close relationship between the defendant and the squire was such that the acts of the squire, because of the overall intention of the arrangement, could be imputed to the defendant.

All of the statutory provisions violated by the defendant by and through this arrangement were specifically designed by the legislature to protect the class of persons represented by the plaintiff from fraud, mistake and ignorance. Had the defendant and Squire Kirkpatrick followed the statutory procedures the error in the amount due would have been discovered initially, the default judgment never would have been issued, nor would the plaintiff's wages have been subject to the suggestee execution. The injustice would not have occurred. We hold, therefore, that where there is intentional rather than merely negligent disregard of a law designed to protect the public against a particular abuse, and where such intentional disregard of the law permits injury from the exact abuse sought to be avoided, punitive damages may be assessed in addition to compensatory damages.

The plaintiff prosecuted this law suit against defendant Huffman on the grounds of concurrent negligence; however, defendant contends that if there were any willful, wanton, or malicious disregard of plaintiff's rights, those qualities were evinced by the squire, and not by the defendant collection agent.

Although it is difficult to characterize the relationship between defendant and the squire as an agency, master

servant relationship, or conspiracy, it had elements of all of these. The defendant was the patron of the squire, and the squire evidently made considerable profit from the relationship. While the law would imply substantial independence on the squire's part by virtue of his position as a judicial officer, the jury were entitled to find that Huffman, through his ability to choose squires, and thereby deny Squire Kirkpatrick appreciable income, effectively controlled the squire's method of operation. Certainly there could be no responsibility on the part of defendant for the actions of the squire had the defendant used him only once, or for that matter, had he used him intermittently along with other justices of the peace over a number of years. However, here the jury could infer from the facts presented at trial that the arrangement between the squire and the defendant was such as to give the defendant the level of control which would effectively make the squire the defendant's agent. Theoretical judicial independence which would exist in a court of record where compensation of the judicial officer is wholly unrelated to the volume of the court's business, should not obfuscate in this case a relationship dictated by practical economics and human profit motives. Concurrent negligence is an interesting way of expressing this relationship, and regardless of how it is expressed the jury understood the problem.

In the case of *Hains v. Parkersburg, Marietta & Interurban Ry. Co.,* 75 W.Va. 613, 84 S.E. 923 (1915) the Court specifically held that in an agency relationship a master can be liable for exemplary, as well as compensatory damages through the acts of his servants. In syllabus point 4 the Court said:

> "If a master knowingly employs or retains a careless and incompetent servant, he thereby impliedly authorizes or ratifies his negligent acts, committed in the course of his employment, and, if the servant's negligence is wanton and wilful [sic] or malicious, the master is liable for exemplary or punitive damages."

Defendant contends that plaintiff's instruction No. 4 is inconsistent with defendant's instruction No. 2, and we agree with this contention. Defendant's instruction No. 2 says:

"The court instructs the jury that plaintiff claims defendant wilfully and wantonly brought suit for an incorrect amount against him on behalf of Stevens Clinic in 1966 and wilfully and wantonly caused a suggestee execution to be issued thereon in 1968 when the plaintiff did not owe anything upon said judgment or did not owe the amount set forth in the suggestee, and that this caused plaintiff damage. You are instructed that before the plaintiff is entitled to any verdict herein he must prove to you by a preponderance of the evidence: (1) that the defendant knew or instituted against plaintiff that the amount owed should have known in 1966 when the suit was by plaintiff was less than the amount sued for, (2) that the defendant thereafter in 1968 wilfully directed or caused the issuance of a suggestee execution to collect an improper amount from plaintiff, and for the purpose of harassing and annoying defendant, and (3) that plaintiff suffered some actual damage by reason thereof.

"If, from the evidence, you believe that when defendant originally instituted an action against plaintiff on behalf of Stevens Clinic, he erroneously exceeded the amount then due by Stevens Clinic but did not cause a suggestee execution to be issued thereon for collection of such erroneous amount or if you believe in any event the defendant did not wantonly or wilfully with ill motive or purpose cause such 1968 suggestee execution to be issued, your verdict should be returned in favor of the defendant in this action."

In light of the nature of the relationship between the justice of the peace and the defendant, the defendant's instruction No. 2 is too favorable to defendant. While ordinarily inconsistent instructions would be grounds for reversal, any error which may have occurred in this case by giving defendant's instruction No. 2 inured to the

benefit of defendant and he is without grounds for reversal.

Legal process is a powerful weapon, and a high standard of care is demanded in its use. That standard of care is frequently set forth in minute detail in statutory provisions designed to safeguard the rights of the ignorant or powerless. Where there is a deliberate as opposed to a negligent circumvention of these provisions, malice may be inferred although there may not have been any actual malice toward a particular individual. The foundation of the inference of malice is the general disregard of the rights of others, rather than an intent to injure a particular individual.

Accordingly the judgment of the Circuit Court of McDowell County is affirmed.

*Affirmed.*

BERRY, PRESIDENT, dissenting:

I respectfully dissent from the majority opinion only as to the punitive damages awarded in the judgment of the Circuit Court of McDowell County and affirmed by the majority of the Court.

The complaint alleges that the defendant wantonly, wilfully, recklessly and illegally caused the issuance of a suggestee execution by a McDowell County justice of the peace. The evidence indicates that the defendant, upon being advised by the Stevens Clinic Hospital that the debt had been paid by the plaintiff, called the justice of the peace and told him that the amount due and owing to the Clinic had been paid and its files closed. Notwithstanding this information, the justice of the peace, without consulting the defendant, issued the suggestee execution upon a purported judgment which had no relation to the amount the plaintiff owed to the Stevens Clinic Hospital. This suggestee execution was served on the plaintiff's employer who withheld certain monies from his wages. The plaintiff protested to the justice of the peace with regard to the withholding of his wages,

and when the justice of the peace called the defendant, the defendant reminded him that he had advised him that the amount owed by the plaintiff had been paid. The money withheld was refunded to the plaintiff. The justice of the peace died and this action was instituted against the defendant. If punitive damages are warranted in this case, they are not warranted against the defendant. They could be awarded only against the justice of the peace.

The defendant did not cause the issuance of the suggestee execution. In fact, his action advising the justice of the peace that the debt had been paid would be an attempt to prevent the issuance of the suggestee execution. In order to sustain a claim for punitive damages the wrongful act must have been done maliciously, wantonly, mischievously or with criminal indifference to civil obligations. *Jopling v. Bluefield Water Works & Improvement Co.,* 70 W.Va. 670, 74 S.E. 943; *Commonwealth Tire Company v. Tri-State Tire Company,* 156 W.Va. 351, 193 S.E.2d 544. There is no evidence that the defendant maliciously or wantonly caused the suggestee execution to be issued in the instant case, and certainly he did not act with criminal indifference to civil obligations. He specifically acted to prevent the issuance of a suggestee execution.

It has been held that where a distress warrant was wrongfully sued out there is no liability for punitive damages in the absence of fraud, malice or other aggravating circumstances. *Darnell v. Wilmoth,* 69 W.Va. 704, 72 S.E. 1023.

The evidence must establish malice or intentional wrongdoing before punitive damages are warranted. *Commonwealth Tire Company v. Tri-State Tire Company, supra.*

Chapter 50, Article 13, Section 13 of the Code of West Virginia, 1931, referred to in the majority opinion as not having been complied with, does not pertain to the execution involved in this case and issued by the justice

of the peace. The suggestee execution, attaching the wages of the plaintiff, was issued under the provisions of Code, 38-5A-1 et seq., as amended, without the request of the defendant or the Stevens Clinic Hospital for the issuance of a regular execution, which is required to be done before a suggestee execution attaching wages can be issued. Then, too, no affidavit was filed by the defendant as required by Code, 38-5A-3, as amended, before the suggestee execution involved here should issue.

The institution of the action in the court of the justice of the peace and the issuing of the suggestee execution by the justice of the peace without authority or request of the defendant are two separate and distinct acts. The defendant cannot be subjected to punitive damages for the unauthorized acts of the justice of the peace.

It is crystal clear that the justice of the peace was solely responsible for the improper withholding of plaintiff's wages and there was no participation on the part of the defendant.

It is admitted in the majority opinion that plaintiff's instruction number 4 given by the court is inconsistent with defendant's instruction number 2 given by the court dealing with punitive damages. It has been held that the giving of inconsistent instructions constitutes reversible error even though one of them is a correct statement of the law. *State Road Commission v. Darrah,* 151 W.Va. 509, 153 S.E.2d 408; *West Virginia Department of Highways v. Bartlett,* 156 W.Va. 431, 194 S.E.2d 383.

For the reasons stated in this dissent, I would reverse the judgment of the Circuit Court of McDowell County pertaining to punitive damages.