MARVIN LEACH

*v.*

BISCAYNE OIL AND GAS CO., INC.

(No. 15293)

Decided March 19, 1982.

*Earley, Bailey, Pfalzgraf & Seufer and John S. Bailey, Jr.,* for appellant.

*James M. Powell,* for appellee.

HARSHBARGER, JUSTICE:

Marvin Leach sued Biscayne Oil and Gas Company for compensatory and punitive damages he suffered when Biscayne trespassed on his Wood County property, constructed a road, leveled trees, erected oil storage tanks, natural gas regulators and other oil and gas paraphenalia. Gas constantly seeped from the installation and soon there was a fire that damaged more trees. A jury awarded Leach $8,200 compensatory and $41,800 punitive damages. The trial court granted Biscayne's motion to set aside both verdicts and awarded a new trial because the verdict was not supported by the evidence, was contrary to law and resulted from passion and prejudice. He decided he erred in his jury charge, and that plaintiff's counsel's argument that punitive damages could be three to five times the amount of compensatory award was error. We agree with his conclusion about his instruction.

I.

Plaintiff's counsel adequately presented his trespass evidence, but submitted only minimal proof to support any damage assessment. In *Jarrett v. E. L. Harper & Son, Inc.,* 160 W.Va. 399, 235 S.E.2d 362 (1977), we redefined the proper measure of damages for injury to realty:

> 2. When realty is injured the owner may recover the cost of repairing it, plus his expenses stemming from the injury, including loss of use during the repair period. If the injury cannot be repaired or the cost of repair would exceed the property's market value, then the owner may recover its lost value, plus his expenses stemming from the injury including loss of use during the time he has been deprived of his property.

3. Annoyance and inconvenience can be considered as elements of proof in measuring damages for loss of use of real property.

*Id.,* Syllabus Points 2 and 3.

Leach's expert testified that the land could be repaired by reshaping and revegetating at an estimated cost of $2,185.00. Injuries to cut and removed trees were irreparable, so the trial court properly instructed that damages were the market values of trees destroyed, our rule found in *Darnell v. Wilmoth,* 69 W.Va. 704, 72 S.E. 1023 (1911): "For the cutting of growing timber having no more than ordinary commercial value, a proper measure of damages is the market value on the stump." *Id.,* Syllabus Point 3.

A property owner may testify about the value of his destroyed property. *Royal Furniture v. City of Morgantown,* 164 W.Va. 400, 263 S.E.2d 878 (1980); *West Virginia Department of Highways v. Sickles* 161 W.Va. 409, 242 S.E.2d 567 (1978). The Fourth Circuit Court of Appeals, applying West Virginia law, found an owner's testimony about value of his destroyed timber admissible. *Justice v. Pennzoil Co.,* 598 F.2d 1339 (4th Cir.), *cert. denied,* 444 U.S. 967, 100 S.Ct. 457, 62 L.Ed.2d 380 (1979). Here, Leach testified that destroyed trees were full grown hardwoods, but he did not testify nor introduce other evidence about their size, circumference, potential uses or sales of similar trees in his area. We think better practice, especially if a non-expert owner's testimony is used, requires minimally that average dimensions of destroyed trees and potentials for marketability be proved.

The jury was properly instructed to consider damages for annoyance and inconvenience. *Jarrett, supra,* Syllabus Point 3.

But Judge Black was correct to set aside the verdict because his instruction on damages for fire-injured trees was flawed. He told the jury only that it should ascertain their market value. The rule, however, is:

Where growing timber of no sepcial value other than its commercial value is destroyed by such

fire, the proper measure of damage is its market value on the stump; and *if partially destroyed or injured the measure of damage is the difference between its market value immediately before and after the fire.* (Emphasis added.)

> *Danielley v. Virginian Ry. Co.,*
> 103 W.Va. 97, 136 S.E. 691 (1927),
> Syllabus Point 4.

A new trial is required on this point.

## II.

Leach's closing argument on punitive damages included:

> If you believe from their testimony that the Defendant intentionally and willfully with absolute disregard for Mr. Leach's property, his private property, that which he owns, then you are entitled to award Mr. Leach what I refer to as punitive damages or exemplary damages and I suggest to you that when you get down to the punitive damages, you might consider an award of punitive damages in the neighborhood of three to five times the amount of the compensatory damages.

> Record, p. 96.

No objection was made to this argument during the trial, but Biscayne argued and Judge Black agreed that it was error, entitling defendant to another trial.

The court properly instructed its jury that punitive or exemplary damages must bear a reasonable proportion to compensatory damages.

> Punitive or exemplary damages are damages which together with and in reasonable proportion to the amount of compensatory damages will punish the defendant and in the judgment of the jury be sufficient to deter others from engaging in like course of conduct.

> *Spencer v. Steinbrecher,*
> 152 W.Va. 490, 164 S.E.2d 710
> (1968), Syllabus Point 5.

We recently reiterated that punitive damages are to punish a wrongdoer and deter further reckless conduct by

him and others. *Bond v. City of Huntington*, ___ W.Va. ___, 276 S.E.2d 539, 544-46 (1981); *Hensley v. Erie Insurance Co.*, ___ W.Va. ___, 283 S.E.2d 227 (1981). In 1918 we recognized that:

> It is true there are other elements that enter into the ascertainment of this character of damages, such as the character and reputation of the parties, their standing in society, and their financial ability. The object of such punishment is to deter the defendants from committing like offenses in the future, and this it may be said is one of the objects of all punishment, and we recognize than it would require, perhaps, a larger fine to have this deterrent effect upon one of large means that it would upon one of ordinary means, granting that the same malignant spirit was possessed by each.
>
> *Pendleton v. Norfolk & W. Ry. Co.*,
> 82 W.Va. 270, 277-278, 95 S.E.
> 941, 944 (1918).

A $41,800 punitive damage verdict indicates this jury found Biscayne Oil's spirit malignant and attempted to deter it and others from acting in kind again. A jury's assessment should not be casually disregarded. *See Addair v. Majestic Petroleum Co., Inc.*, 160 W.Va. 105, 232 S.E.2d 821 (1977).

Other courts have followed this principle. The Supreme Court of Idaho sustained a $12,500 punitive damage award accompanying a $350 compensatory verdict against a car dealer who knowingly turned an odometer back 7,000 miles. Idaho follows the "reasonable relation" rule, but its court has reasoned:

> Of course, the ratios of punitive to actual damages which may be gleaned from the cases have little precedential value when excised from their respective factual settings. This is true because the culpability of a defendant's conduct and the sociological significance of damages as a deterrent vary from case to case. Thus, the true basis for an award of one amount of punitive damages as

opposed to another amount lies in an overall appraisal of the circumstances of the case.

The amount of actual damages sustained by a plaintiff is one indication of the culpability of the defendant's acts, but it cannot be the sole criterion for the assessment of punitive damages. Also relevant is the prospective deterrent effect of such an award upon persons situated similarly to the defendant, the motives actuating the defendant's conduct, the degree of calculation involved in the defendant's conduct, and the extent of the defendant's disregard of the rights of others. These are legitimate concerns of the law, and the application of any fixed arithmetic ratio to all cases in which punitive damages are assessment would be arbitrary. It therefore must be recognized that the requirement of a "reasonable relation" between actual and punitive damages serves as a rough device available to trial and appellate courts for the purpose of paring down plainly extreme awards of punitive damages.

> *Boise Dodge, Inc. v. Clark,*
> 92 Idaho 902, 908, 453 P.2d
> 551, 557-58 (1969).

Indiana's Supreme Court remitted $7,500 of a $15,000 punitive damage award, leaving extant a sum that was still five times the $1,500 compensatory damages. *Hibschman Pontiac, Inc. v. Batchelor,* 266 Ind. 310, 362 N.E.2d 845 (1977).

The Third Circuit Court of Appeals, applying Pennsylvania law, sustained $60,590.96 in punitive damages for intentional infliction of emotional distress, an amount six times greater than the compensatory damages. *Chuy v. Philadelphia Eagles Football Club,* 595 F.2d 1265, 1277-1279 (3rd Cir. 1979) (en banc). The Tenth Circuit allowed a six-to-one ratio in *Big O Tire Dealers, Inc. v. Goodyear Tire and Rubber Co.,* 561 F.2d 1365 (10th Cir. 1977), *cert. dismissed,* 434 U.S. 1052, 98 S.Ct. 905, 54 L.Ed.2d 805 (1979). Compensatory damages for an oil spill were assessed at $60,000, but the Second Circuit had no difficulty sustaining punitives of $200,000:

The jury could reasonably have found that, for a substantial interval, responsible officials of Cities elected to ignore their obligations under the April 1972 stipulation and the New York Environmental Act. In view of the resources Cities could have brought to bear to abate the pollution in Monticello and the deliberate decision by responsible persons not to do so, the award does not appear manifestly excessive. Exemplary damages are intended to inject an additional factor into the cost-benefit calculations of companies who might otherwise find it fiscally prudent to disregard the threat of liability. To function effectively, the award must be "of sufficient substance to 'smart' . . . the offender."

> *Doralee Estates v. Cities Service Oil Co.*, 569 F.2d 716, 723 (2d Cir. 1977) (citations and footnotes omitted).

Most analogous of all cases we have found is *Leimgruber v. Claridge Associates, Ltd.*, 73 N.J. 450, 375 A.2d 652 (1977). It also involved a trespass to trees. Defendant, building a large apartment complex, cut tops off eleven trees on plaintiff's property. The trees were mutilated but not killed. The trespass was intentional and in wanton, wilful disregard of plaintiff's property rights, and the trial judge, sitting without a jury, awarded $1,700 compensatory and $16,500 punitive damages. New Jersey's Intermediate Appellate Court thought the punitive award "clearly excessive" and reduced it to $5,000, but the New Jersey Supreme Court unanimously reversed and reinstated the trial court's judgment. Chief Justice Hughes wrote:

> In assessing such damages, the trier of fact should take into consideration all of the circumstances surrounding the particular occurrence including the nature of the wrongdoing, the extent of harm inflicted, the intent of the party committing the act, the wealth of the perpetrator, as well as any mitigating circumstances which may operate to reduce the amount of the damages. *Restatement (Second) of Torts* § 908(2) (Tent.

Draft No. 19, 1973); *22 Am.Jur.2d Damages* § 263 (1965).
*Id.,* at 456, 375 A.2d at 655-656.

Biscayne's egregious conduct and blatant disregard of Leach's property rights certainly justified a jury verdict of $41,800 punitive damages.

Defendant is indeed entitled to a new trial, however.

*Affirmed.*