MAX TURK, *et al.*

*v.*

EULA MCKINNEY

(No. 10078)

Submitted January 18, 1949. Decided

March 8, 1949.

*Kingdon & Kingdon* and *Arthur R. Kingdon,* for plaintiffs in error.

*William M. Holroyd,* for defendant in error.

Lovins, Judge:

This writ of error, prosecuted in this Court by Max Turk and G. L. Turk, partners doing business as American Loan Company, and hereinafter referred to as "plaintiffs", involves an action initiated by plaintiffs before W. R. Haga, a justice of Wyoming County, West Virginia, under Code, 38-5-a-5, which provides, in part, as follows: "If the suggestee upon whom the execution shall be served, shall fail or refuse to pay over to the officer serving the execution or to the judgment creditor the required percentage of the indebtedness, he shall be liable to an action therefor by the judgment creditor * * *." Allegedly, Eula McKinney, doing business as Mullens Taxi Co., and hereinafter referred to as "defendant", is a suggestee as contemplated by Code, 38-5-a. This action arose in the following manner:

On June 10, 1946, Haga rendered a judgment for plaintiffs against Ed C.. Bush in the amount of $115.95 and costs. The judgment appears to have been based upon a loan contract bearing interest at the rate of $3\frac{1}{2}\%$ per month, as provided by Chapter 13, Section 13, Acts of the Legislature, Regular Session, 1933. The judgment provided that the amount thereof should also bear interest at the rate of $3\frac{1}{2}\%$ per month from September 14, 1942, until paid. Though not in issue herein, it is well to state at this point that the allowance of interest on a judgment, based upon a contract, should be at the same rate, if lawful, as provided for by the contract. *Shipman v. Bailey et al.,* 20 W.Va. 140; *County Court v. Morrison,* 116 W.Va. 403, 180 S.E. 440.

Thereafter, on August 8, 1946, plaintiffs filed with Haga an affidavit, executed by plaintiffs' attorney, stating: "* * * that an execution issued in the above cause on the 3rd day of July, 1946, has been returned_____ wholly_____unsatisfied, and that Ed C. Bush, the

judgment debtor is now employed by Mollie Heath, t/a Mullens Taxi Company and that his wages exceeds Ten Dollars ($10.00) per week * * *." The affidavit requested the issuance of a suggestee execution to be served upon the employer named therein.

Although we do not deem the suggestee execution issued as a result of such affidavit fatally defective for this reason alone, it should be noted here that this Court does not approve the practice of attorneys testifying in a case in which he represents one of the litigants, by affidavit or otherwise, where the same evidence is available to the attorney through other witnesses. See *State v. Simmons*, 130 W.Va. 33, 42 S.E. 2d 827.

On August 12, 1946, Haga issued a suggestee execution which recited that "satisfactory proof has been filed with me that salary or wages are now, or will hereafter, * * * become due to the judgment debtor from Mollie Heath, and Eula McKinney, trading and doing business as Mullens Taxi Co. * * *." Such suggestee execution was duly served upon Mollie Heath and defendant on August 22, 1946.

On May 1, 1947, the suggestee execution was returned wholly unsatisfied, and the following day plaintiffs instituted this action against Mollie Heath and defendant, contending that though Bush was employed by them as a taxi driver, being paid on a commission basis exceeding ten dollars per week, the said Mollie Heath and defendant had refused or failed to comply with the demands of the said suggestee execution. On May 13, 1947, Haga dismissed the action against Mollie Heath, but rendered judgment for plaintiffs against defendant in the amount of three hundred dollars. From such judgment defendant appealed to the Circuit Court of Wyoming County.

At the trial in the circuit court, plaintiffs, having introduced into the evidence a transcript of the justice's judgment of June 10, 1946, and the suggestee execution

dated August 12, 1946, together with the affidavit in support of the issuance thereof, adduced the testimony of two taxi drivers who operated out of different taxi "stands", located in the same vicinty as defendant's. Both of these witnesses testified that they frequently saw Bush operating one of defendant's taxis during the period from August, 1946, to May, 1947, and that Bush usually "loafed around" defendant's taxi "stand". One of these witnesses testified that by working ten hours a day, seven days a week, the witness had received, on a twenty-five per cent commission basis, average earnings of $39.60 per week.

The defendant testified that Bush, who was her nephew-in-law, resided at her home during a part of the time from August, 1946, to May, 1947, but that since that time he had moved to Illinois, leaving an indebtedness due defendant for room and board; that Bush was afflicted with a recurrent disability incurred while in the armed forces of the United States; that immediately following the service of the suggestee execution upon defendant, Bush left her regular employment; that Bush did "loaf around" defendant's taxi "stand", but, being intoxicated about half the time, he was not permitted to operate a taxi; that though, on occasions, he did drive for defendant during the period from August, 1946, to May, 1947, he never spent more than a fourth of his time doing so; and that, though defendant had attempted to collect what commissions Bush did earn, she was unable to do so because Bush refused to turn over to her more than seventy-five per cent of the taxi fares received by him, keeping the remainder as his commission.

Defendant is corroborated in her testimony by her bookkeeper, who testified further that for about sixty days during the period covered, Bush was hospitalized in Huntington for the recurrent disability incurred in the armed forces.

At the request of plaintiffs, defendant agreed to produce in court her books showing Bush's earnings during

the period from August, 1946, to May, 1947. Defendant's bookkeeper had in his possession, when he testified, a paper on which, he stated, he had copied Bush's earnings, as taken from defendant's books. Plaintiffs' motion to exclude said paper, as well as its contents, was sustained, and no further effort was made to cause the production of defendant's books.

At the conclusion of all the testimony, plaintiffs offered one instruction, which was peremptory, in its effect, and defendant offered three instructions. The trial court refused all instructions and the jury returned a verdict for defendant. After overruling plaintiffs' motion to set aside the verdict and award a new trial, the trial court rendered judgment on the verdict. It is to such judgment that this writ of error is prosecuted.

The only errors assigned in this Court are based upon: (1) The refusal of the trial court to direct a verdict for plaintiffs; and (2) the refusal of the trial court to set aside the verdict on the ground that the same is contrary to the law and the evidence.

Although this Court generally will consider only questions raised by formal assignments of error, it may always take cognizance of jurisdictional questions fairly arising on the record. *State v. McLane,* 128 W.Va. 774, 776, 38 S.E. 2d 343; *Gapp v. Gapp,* 126 W.Va. 874, 30 S.E. 2d 530; *Buskirk v. Ragland,* 65 W.Va. 749, 752, 65 S.E. 101; *Cresap v. Kemble,* 26 W.Va. 603, 606. Jurisdictional questions respecting a judgment of a justice differ from those respecting a judgment of a court of record in that the jurisdiction of the justice must be made to appear before any presumptions of regularity and validity attach. *Transfer & Storage Co. v. Jarrett,* 110 W.Va. 97, 157 S.E. 46. But the records of a justice constitute *prima facie* evidence of jurisdictional and other facts therein contained. *Kohn v. Herndon,* 78 W.Va. 650, 653, 90 S.E. 107. See *State v. Emsweller-Jenkins,* 78 W.Va.

214, 88 S.E. 787; *Carpenter v. Swick,* 116 W.Va. 626, 182 S.E. 764. Applying these principles to the case at bar, it first becomes our duty to ascertain whether Haga had jurisdiction to issue the suggestee execution of August 12, 1946, on which this action is based.

Code, 38-5-a-3, provides for the issuance of a suggestee execution and the necessary procedural and jurisdictional steps with reference thereto. The first sentence of the section provides that application for the issuance of a suggestee execution may be made "upon the return of an execution wholly or partly unsatisfied." This Court has held that, notwithstanding Code, 38-5-a-13, such a return of an execution, wholly or partly unsatisfied, is a jurisdictional prerequisite to the issuance of a suggestée execution; and that compliance with such prerequisite must be made to appear on the face of the suggestee execution itself. *Kincaid v. Vinson,* 123 W.Va. 149, 14 S.E. 2d 266; *Rorrer v. Murphy,* 124 W.Va. 1, 18 S.E. 2d 581.

For similar reasons we think that compliance with other jurisdictional provisions contained in Code, 38-5-a-3, are prerequisites to the issuance of a suggestee execution, and that such compliance must appear on the face thereof. See, generally, *Harshbarger v. Cowgill,* 123 W.Va. 667, 17 S.E. 2d 325; *Coal and Coke Co. v. Kitts,* 126 W.Va. 13, 27 S.E. 2d 65. One such provision, which we consider jurisdictional to the issuance of a suggestee execution, is the requirement that "satisfactory proof shall be made, by affidavit or otherwise, * * *" that the judgment debtor has money, exceeding ten dollars per week, due or to become due within the next year, as salary or wages arising out of private employment.

It will be noted that the affidavit, on which the suggestee execution under consideration was based, specified that Mollie Heath, trading as the Mullens Taxi Com-

pany, was Bush's employer, while the suggestee execution, as issued, was directed against Mollie Heath and defendant. It will further be noted that Mollie Heath was later dismissed from this action, and judgment was rendered by the justice against defendant alone. It is apparent that the justice was without jurisdiction to issue the suggestee execution directed to defendant, where the affidavit on which the same was based specifies Mollie Heath alone. The issuance of the suggestee execution being void as to defendant for lack of jurisdiction, it necessarily follows that no cause of action against defendant arises thereon under Code, 38-5-a-5. Accordingly, the judgment of the Circuit Court of Wyoming County must be affirmed, though for reasons other than those on which such court apparently acted.

Notwithstanding our holding, as hereinabove stated, we do not believe that plaintiffs have satisfactorily proved that Bush earned moneys from defendant which would be subject to a valid suggestee execution.

In the first place, Code, 38-5-a-3, provides that satisfaction of a suggestee execution shall, in no event, "reduce the amount payable to the judgment debtor to less than ten dollars per week." If it be true that Bush worked only a fourth of the time during each week, as intimated by defendant's testimony, then his weekly earnings were less than ten dollars, based upon the average weekly earnings of the only taxi driver testifying respecting the amount he earned. If Bush's earnings were more than ten dollars during any one or more specific weeks, this record is wholly devoid of evidence indicating the times or amounts thereof. In other words, while the record does show that Bush did some work for which he was compensated by defendant, the amount of the work and the compensation received therefor are not shown. A jury could only speculate as to such amounts. It requires no citation of authority that juries

will not be permitted to base their findings of damages upon conjecture and speculation.

Defendant and her bookkeeper each testified that the taxi company's books would disclose Bush's actual earnings. These books could have been made available to plaintiffs by means of a *subpoena duces tecum.* For some reason not clearly disclosed by this record, the books were not produced in court, and plaintiffs rested their case upon the inadequate proof submitted by them. From the record herein, the verdict of the jury was wholly justified.

It is true that this record clearly shows a palpable effort by defendant and Bush to avoid the legal consequences of the alleged suggestee execution. Such action by them is unwarranted and reprehensible. But their actions in that respect do not detract in the least from the fact that there was a lack of satisfactory proof of damages adduced by plaintiffs. In an action under Code, 38-5-a-5, by a judgment creditor against a suggestee upon whom is served a valid suggestee execution, the burden is upon the plaintiff, in the same manner as it would be in any other action, to prove damages resulting from defendant's failure or refusal to pay over the required percentage demanded in the suggestee execution.

Nor do we lend credence or support to defendant's contention that she never received in her hands any funds to which Bush was entitled. The fact that Bush failed or refused to account to defendant for his full receipts, but instead retained his commissions therefrom, has no bearing whatever upon defendant's liability under the statute in a proper case. Code, 38-5-a-1, specifically includes "compensation measured partly or wholly by commissions", as being subject to a suggestee execution. Upon being properly served with a valid suggestee execution, it is an employer's duty to the

468

judgment creditor to adhere strictly to the demands of such suggestee execution, and no deviation therefrom can be tolerated. It is to this end that the above quoted provision of Code, 38-5-a-5, was enacted.

There being insufficient proof of damages and no suggestee execution validly issued as to defendant, the judgment of the Circuit Court of Wyoming County is affirmed.

*Affirmed.*