**Rodney D. ROUSH, Plaintiff,**

v.

**Judith Annette ROUSH, Betty Wickline, the State of West Virginia, Acting Through its Department of Human Services, and Rhone–Poulenc Ag Company, Defendants.**

**Civ. A. No. 2:90–0912.**

United States District Court, S.D. West Virginia, Charleston Division.

April 18, 1991.

Larry L. Skeen, Skeen & Skeen, Ripley, W.Va., for plaintiff Rodney D. Roush.

Michele Grinberg, Kay, Casto, Chaney, Love & Wise, Charleston, W.Va., for defendant Judith Annette Roush.

W. Randolph Fife, Daniel R. Schuda, Steptoe & Johnson, Charleston, W.Va., for defendant Betty Wickline.

Michael B. Victorson, Christopher B. Power, Robinson & McElwee, Charleston, W.Va., for defendant Rhone–Poulenc Ag Co.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

On September 5, 1990, Plaintiff Rodney D. Roush (Mr. Roush) filed his complaint against the Defendants alleging that they improperly suggested his wages pursuant to *W.Va.Code*, § 48A–1–1, *et seq.* (West

Virginia Enforcement of Family Obligations Act). The named Defendants include Judith Annette Roush (Mrs. Roush), Mr. Roush's ex-wife; the West Virginia Department of Human Services (DHS); Betty Wickline (Wickline), a paralegal with DHS; and Rhone–Poulenc Ag Company (RP), Mr. Roush's employer.

Mr. Roush charges that RP (1) acted in concert with the other Defendants by illegally and/or unconstitutionally suggesting Mr. Roush's wages; and (2) suggested and continues to suggest "an illegally high and usurious amount"[1] from Mr. Roush's weekly net income. RP has responded by filing a motion to dismiss pursuant to *Rule* 12(b)(6), Federal Rules of Civil Procedure. Mr. Roush thereafter filed a memorandum of law in opposition, to which RP has replied. Accordingly, this matter is now mature for the Court's attention.

The allegations made in Mr. Roush's complaint and responsive memorandum are taken as true for purposes of this motion.

In 1986 Mrs. Roush initiated a divorce action against Mr. Roush in the Circuit Court of Kanawha County, West Virginia (Civil Action No. 86–C–2783). The issues in contest were heard by Kanawha County Family Law Masters Merille Steiger (Steiger) and William Tantlinger (Tantlinger). On February 11, 1987, Steiger entered a recommendation/order confirming that Mr. Roush was in arrears in his support alimony obligations in the amount of $925.00. Steiger granted Mrs. Roush a judgment in that amount and ordered that Mr. Roush pay Mrs. Roush $100.00 per month in discharge of the arrearage in addition to his current monthly support obligation of $450.00.[2]

A final divorce decree was entered on January 27, 1988. This decree awarded monthly child support and alimony to Mrs. Roush in the amounts of $300.00 and $400.00 respectively. At a hearing of February 16, 1988, Tantlinger found that Mr. Roush had paid $45.00 of the $925.00 arrearage but remained in arrears in the sum of $880.00. Tantlinger also noted that Mrs. Roush's son, who Mr. Roush had adopted during their marriage, had left Mrs. Roush's custody and returned to live with his natural father in North Carolina. As a consequence, Mr. Roush's child support obligation for his son was reduced from $150.00 to $50.00 per month. Mr. Roush, however, was ordered to establish a special savings account in the name of his adopted son and to make monthly $100.00 deposits therein.

Several days after March 22, 1988, Mr. Roush received a written notice from the Child Advocate Office of the DHS through Betty Wickline that a suggestion of his wages was being commenced in the amount of $700.00 per month, composed of $300.00 per month in child support ($150.00 per month per child for the adopted son and the daughter) and $400.00 per month in alimony. This notice also advised Mr. Roush that an additional 10% of his wages would be suggested to reduce a $400.00 arrearage. Mr. Roush was further advised that this suggestion would occur unless he requested a meeting with the Child Advocate Office within fourteen days, and that if the meeting with the Child Advocate Office failed to resolve any contested mistakes of fact, a hearing on the proposed suggestion would be conducted by the family law master.

Mr. Roush responded by making the appropriate request for a hearing, and on April 6, 1988, he appeared to object to the notice of suggestion. Mr. Roush's objections were not resolved at this meeting. Mr. Roush next appeared with his counsel, Joseph Zak, on April 7, 1988, at a hearing before Steiger. The DHS, Wickline and Mrs. Roush all failed to appear for the April 7, 1988, hearing. Accordingly, no action was taken by Steiger on the request for wage suggestion. Moreover, at the conclusion of the April 7, 1988, hearing, Steiger telephoned "someone at DHS"[3],

---

**1.** Plaintiff's complaint, Count Four.

**2.** Mr. Roush, therefore, meets the statutory definition of an "obligor" pursuant to *W.Va.Code,*

**3.** Plaintiff's complaint, Count One, p. 6.

believed to be its counsel, Ann Charnock, and advised her that DHS could not suggest Mr. Roush's wages under such circumstances. Nevertheless, DHS began suggesting Mr. Roush's wages through RP pursuant to the notices of suggestion.[4] Moreover, after Mr. Roush's adopted son reached 18 years of age, DHS continued to suggest Mr. Roush's wages for the son's support until the agency finally responded to Mr. Roush's repeated written demands to reduce the suggestion to $550.00 per month plus 10% toward a nonexistent arrearage.

In August of 1988, the Roushes' daughter left Mrs. Roush's custody and resided with Mr. Roush until April 11, 1989.[5] Nevertheless, the suggestion against Mr. Roush including his daughter's support continued during the period in which his daughter resided with Mr. Roush.

As a result Mr. Roush moved the Kanawha County Circuit Court to terminate any further suggestion of his wages. By an order entered August 23, 1989, the Honorable John Hey, Judge, ruled that Mr. Roush:

"... has previously paid all such arrearage and is now in fact owed a credit thereon which, according to the Department of Human Services, amounts to $121.15. The court, therefore, orders that such suggestion be dismissed and discharged and a copy of this order is to be delivered to the West Virginia Department of Human Services as evidence of the court's ruling in this regard."[6]

A unanimous Supreme Court of Appeals decision prohibited Judge Hey from further proceedings and remanded the case for reinstatement of child support and alimony. *Judith R. v. Hey, Judge,* —— W.Va. ——, 405 S.E.2d 447 (1990). Thus, the suggestion upon Mr. Roush's wages continues unabated despite his repeated complaints, demands and requests to Defendants to cease collection.

Chapter 48A, Article 2 of the West Virginia Code provides for the West Virginia Child Advocate Office, which is directed, *inter alia* to "... pursue the enforcement of support orders through the withholding from income of amounts payable as support...." *W.Va.Code,* § 48A–3–3(f). In addition, Article 5 of the Enforcement of Family Obligations Act provides that "the withholding from an obligor's income of amounts payable as spousal or child support shall be enforced by the children's advocate in accordance with the provisions of this section." *W.Va.Code,* § 48A–5–3(a). The children's advocate is involved in all procedures for collection of child and spousal support arrearages and is responsible for the enforcement of child and spousal support orders which provide for immediate income withholding. *W.Va. Code,* §§ 48A–5–3(d), 48A–5–2(e), 48–2–15a, 48–2–15b.

*W.Va.Code,* § 48A–1–3(19) defines "source of income" as an employer or successor employer of any other person who owes or will owe income to an obligor. RP,

---

**4.** Mr. Roush, therefore, alleges that DHS was suggesting $150.00 per month from his wages for his adopted son's support rather than the proper $50.00 per month figure, while at the same time he was required to deposit, and was depositing $100.00 per month in the special savings account as ordered by the court. As a result, over the following eight months, the suggestion of Mr. Roush's wages resulted in an overpayment to Mrs. Roush for child support in an amount of $800.00 thus resulting in a possible delinquency or arrearage of $80.00.

**5.** Accordingly, Mr. Roush claimed he was entitled to a credit against his duty of support of $150.00 per month for eight months, totalling $1,200.00. This credit was later recognized at hearings before Tantlinger and Kanawha Circuit Judge John Hey, as Michele Grinberg, Mrs. Roush's legal counsel, stipulated that Mr. Roush

had overpaid Mrs. Roush in the amount of $121.15.

**6.** Judge Hey sparked national attention in his memorandum opinion and order by further ruling that:

"[Mrs. Roush] and her daughter are currently living in a home with a man to whom [Mrs. Roush] is not married, and the court will not permit such child to remain in her mother's custody nor condone such circumstances. The Court, therefore, grants [Mrs. Roush] thirty days from the date of this hearing in which either to marry such man or to move out and establish separate living arrangements for her and her daughter. If neither alternative condition is met within such thirty day period the court grants custody of [the Roushes' daughter to Mr. Roush]."

as Mr. Roush's employer, is, therefore, a source of income. As part of the Child Advocate Office's enforcement powers, *W.Va.Code*, § 48A–5–3(f) provides as follows:

> "The source of income of any obligor who is subject to withholding, upon being given notice of withholding, shall withhold from such obligor's income the amount specified by the notice and pay such amount to the child advocate office for distribution in accordance with the provisions of Section 4, Article 3 of this chapter. The notice given to the source of income shall contain any such information as may be necessary for the source of income to comply with the withholding order."

In order to determine the amounts which may be withheld, the Child Advocate Office must, *inter alia*, "ascertain the status of the payment record of the obligor;" review of the terms of the support order; examine the payment record to determine whether any arrearages are due; determine whether or not the obligor is supporting another spouse of dependent child other than the spouse or child for whom the proposed withholding is being sought; determine the amount of the obligor's "earnings," "disposable earnings" and "income" under precise statutory definitions; and consider whether the obligor has purposefully acted to minimize his or her income. *W.Va.Code*, § 48A–5–3, 48A–1–3.

The notice given to the source of income shall advise the source of income that the amount to be withheld from the obligor's income may not exceed the maximum amounts permitted under Section 303(b) of the Federal Consumer Credit Protection Act, *W.Va.Code*, § 48A–5–3(f)(1).

Also, the source of income is required by law to send the specified amount to the Child Advocate Office within ten days of the date the obligor is paid. *W.Va.Code*, § 48A–5–3(f)(2). The required withholding must take place no later than the first pay period or first date of payment of income which occurs within fourteen days following receipt of the notice of withholding. *W.Va.Code*, § 48A–5–3(f)(9). *W.Va.Code*, § 48A–5–3(h) provides that: "A source of income must send the amount to be withheld from the obligor's income to the child advocate office."[7] Withholding of amounts payable as support is binding on the source of income until further notice of the Child Advocate Office, *W.Va.Code*, § 48A–5–3(j). As an additional enforcement power, *W.Va.Code*, § 48A–5–3(n) provides that:

> "A source of income is liable to an obligee, including the state of West Virginia and the Department of Health and Human Resources, where appropriate, for any amount which the source of income fails to withhold from income due an obligor following receipt by such source of income of proper notice under subsection (f) of this section ..."

*W.Va.Code*, § 48A–5–3(d)(12), (13) and (14) provide that if the *obligor* contests the notice of suggestion, he may meet with the children's advocate office to attempt to settle the contested issues. And, if this meeting fails to resolve the contested issues, then:

> "A hearing before the family law master will be held at a time and place set forth in the [suggestion] notice, and that following such hearing, the master *will make* a recommended decision to the circuit court; and that a master's recommended decision as to withholding will become effective when it is confirmed *and* an order is entered by the circuit court, and that if the obligor disagrees with the master's recommended decision, he or she will be given the opportunity to make objections known to the circuit court." (Emphasis supplied).

Mr. Roush contends that since (1) he objected to the notice of suggestion; (2) the objections were not resolved by a meeting with the children's advocate office; (3) he appeared before Family Law Master Steiger the following day as scheduled; (4) no

---

7. The director of the Child Advocate Office shall, "by administrative rule, establish procedures for promptly refunding to obligors amounts which have been improperly withheld." *W.Va.Code*, § 48A–5–3(g).

one on behalf of the children's advocate office attended this hearing; and (5) because Steiger did not make a recommendation that the suggestion should proceed,[8] Defendants may not rely on the January 27, 1988, divorce decree as law foundation for the suggestion of Mr. Roush's wages. Thus, the gravamen of Mr. Roush's claim against RP, as stated in his responsive memorandum, is:

> "[F]irst that there was never any order issued by any court, let alone a court of competent jurisdiction, upon which his employer could rely and continually suggesting [Mr. Roush's] wages as [RP] has done in the past and continues to do at present. Second, even if [RP] pleads initial ignorance of this fact and, therefore, no culpability at the onset, after [Mr. Roush] and his counsel objected to [RP] on a number of occasions, both verbally and in writing raising the fact that there was never an order entered after [Mr. Roush's] objections and hearings which confirmed DHS's ... and Betty Wickline's right and responsibility to suggest [Mr. Roush's] wages, at least at the point in time, when they were informed of the situation and were also aware from their own records that excessive amounts were being garnished by the DHS and [Mrs. Roush], as well as the fact that more than the maximum fifty or fifty-five per cent of [Mr. Roush's] weekly disposable wages were being garnished as to some weeks, [RP] was then under a duty to investigate and upon confirmation to cease such illegal, improper and excessive garnishment and to advise the DHS of the reason therefor." [9]

### I.

Mr. Roush has not alleged that RP had any role in the initiation of the suggestion of his wages, or that it took part in the hearings held to determine whether the suggestion should continue. Nor has Mr. Roush asserted that RP did anything inconsistent with the notice orders it received. Apparently, Mr. Roush alleges that RP is liable along with the other named Defendants solely for honoring the notice of suggestion which may have required RP to suggest Mr. Roush's wages improperly. Implicit in his complaint is that RP owed an affirmative duty to Mr. Roush *not* to honor the suggestion notice.

The West Virginia Legislature vested the Child Advocate Office with complete responsibility for enforcing child and spousal support orders, and granted it the power to require suggestion of wages as a means of accomplishing that goal. By law, a source of income which receives such a notice from the DHS must either (1) withhold the specified amount stated in the notice, or (2) become liable to an obligee for the same amount. RP, therefore, was under a legal duty *to honor* the notices which it received from DHS with regard to the suggestion of Mr. Roush's wages "until further notice by the Child Advocate Office." *See W.Va. Code, § 48A–5–3(j).*

■ Under the foregoing statutory scheme, the Court holds a source of income is under a mandatory obligation to comply with a notice requiring income withholding. As such, RP has no discretion to object to the method by which the amount is calculated or the procedures used in issuing such a notice.

■ Alternatively Plaintiff believes he has a cause of action against RP for a claimed violation of 42 U.S.C. § 1983.[10] In this regard, Mr. Roush cites *Lynch v. Household Finance Corp.*, 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424, *rehearing denied* 406 U.S. 911, 92 S.Ct. 1611, 31 L.Ed.2d 822 (1972) for the proposition that the right to enjoy property without unlawful deprivation is a personal right, whether the property in question be paychecks, welfare checks, a home or savings account.[11] Mr.

---

**8.** In fact, Mr. Roush alleges that Steiger actually advised the DHS that it could *not* suggest Mr. Roush's wages.

**9.** Plaintiff's responsive memorandum, p. 2.

**10.** Plaintiff's responsive memorandum, p. 9; Plaintiff's complaint, Count Two, paragraph 7.

**11.** In *Lynch*, the plaintiff filed a declaratory judgment action requesting a ruling by the court

Roush thus asserts that he has a *prima facie* case against his employer where a significant portion of his weekly paycheck is garnished under color of a void garnishment order. The Court does not read *Lynch* as being this broad because an employer's liability was not at issue in *Lynch*.

Mr. Roush next asserts that:

"Improper garnishment and/or attachment procedures under state law constitute acting 'under color of law' and when [such procedures are engaged in by the defendants, including RP], to deny due process and result in the illegal seizure of a citizen's property they become recognized areas of legitimate concern for 1983 actions ..." [12]

In support of this contention, Mr. Roush cites *Coltharp v. Cutler,* 419 F.Supp. 924 (D.Utah 1976); and *McMeans v. Schwartz,* 330 F.Supp. 1397 (D.Ala.1971). *Coltharp* involved allegations of abuse of process followed by the alleged use of an unconstitutional garnishment statute. In *Coltharp,* however, the plaintiff's section 1983 claim was dismissed. In *McMeans,* the defendant filed suit against plaintiff claiming that plaintiff was indebted to him. Contemporaneously, a prejudgment garnishment was taken on plaintiff's wages pursuant to the Code of Alabama. The plaintiff's employer, however, was not named as a defendant. As in the present action, the employer in *McMeans* did nothing more than properly obey the legal process. The holding in *McMeans,* therefore, is inapplicable to RP's motion to dismiss. In summary, Mr. Roush cannot establish in law that he has been *unlawfully* deprived of a property right by RP.

■ Mr. Roush next relies on *Dennis v. Sparks,* 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980) and *McNally v. Pulitzer Pub. Co. et al.,* 532 F.2d 69 (8th Cir.1976), *cert. denied,* 429 U.S. 855, 97 S.Ct. 150, 50 L.Ed.2d 131 (1976), as holding that joint conduct by state and private persons is sufficient to support a finding of unlawful conduct under color of law if the public and private parties act with a common understanding or meeting of the minds. In *Dennis,* the court acknowledged that private persons, jointly engaged with state officials are acting under color of law for purposes of Section 1983 actions. The issue in *Dennis* was whether private persons could act under color of law where the state actor with whom they were charged with conspiring was a judge who was immune from liability in a Section 1983 suit. This case, however, has no bearing on whether one in the position of RP has acted under color of law.

In *McNally,* an inmate of a federal penitentiary brought a civil rights action against various prison officials and a newspaper publisher and reporter seeking damages and injunctive relief as well as a permanent injunction against the reporter and publisher for publishing a newspaper article quoting several portions of a psychiatric report. There, the court held that when private and public parties act with a common understanding or meeting of the minds, the private parties are acting under color of law for purposes of 42 U.S.C. § 1983. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). As stated above, however, Mr. Roush has not alleged that RP played any role in the suggestion of his wages other than simply honoring the suggestion orders as it was required to do by law. Thus, Mr. Roush has failed to allege that RP had a common understanding or meeting of the minds with any state actors. Instead, Mr. Roush's complaint merely asserts that RP acted "in concert with the other defendants." More conclusory allegations of this nature will not suffice.

The complaint in *Grow v. Fisher,* 523 F.2d 875 (7th Cir.1975), was similar to the instant complaint in that it alleged only that private individuals acted "in concert" with state officials. In evaluating this allegation upon a motion to dismiss for failure to state a claim against the individual defendants, the court held that the charge was not sufficiently specific to support a

---

that the statute permitting the garnishment of plaintiff's savings account was unconstitutional.

**12.** Plaintiff's responsive memorandum, p. 10.

claim of conspiracy under 42 U.S.C. § 1983. The court opined:

> "Even if we were to assume ... that the 'in concert' allegation was sufficiently specific to support a claim of conspiracy, there still must be some basis more than mere conclusory allegations that there was an agreement under color of state law to violate the plaintiff's constitutional rights, privileges or immunities."

*Grow, supra,* at 878–79. *See also Martin v. Supreme Court of State of New York,* 644 F.Supp. 1537 (N.D.N.Y.1986) ("assertion of a conspiracy in a Section 1983 action must be pleaded with specificity," and where "there is nothing more in the complaint than the allegation that [the defendant] employed the statutorily provided mechanisms for registration of, and execution on, a judgment," the complaint is insufficient).

As stated above, DHS has as one of its chief tools in the enforcement of child and spousal support orders the right to issue a notice of withholding to any of Mr. Roush's sources of income—including RP. Because Mr. Roush was in arrears as to support obligations he owed to Mrs. Roush, the children's advocate office served RP with suggestion orders. RP, however, is not and was not a party to any of the resulting administrative and/or judicial hearings. RP was a "source of income" because it was Mr. Roush's employer. In accordance with state court and DHS orders, RP did precisely what was required of it by law. Mr. Roush does not allege that RP acted other than in accordance with the notices it received. Instead he asserts that after RP was advised by Mr. Roush of the "defective and/or bogus garnishment order"[13] it was under a duty to make an independent determination as to the validity of each and every such notice prior to honoring it. As previously discussed, the Court does not agree. The Enforcement of Family Obligations Act does not create such a duty, and Mr. Roush has failed to offer any other authority which would impose such a duty. Thus, the Court concludes that Mr. Roush's

complaint, to the extent that it charges RP with illegally and/or unconstitutionally suggesting Mr. Roush's wages, fails to state a claim upon which relief can be granted. Accordingly, Counts One, Two and Three of Mr. Roush's complaint are dismissed as to RP.

## II.

Mr. Roush's complaint also charges that even if the suggestion of his wages was proper, RP is liable "for suggesting an illegally high and usurious amount" from his weekly net income.[14] Mr. Roush asserts that RP has systematically taken more from his wages on a weekly basis than that permitted by statute.

In order to determine the amounts which may be withheld from an obligor's income, the Child Advocate Office must (1) ascertain the status of the payment record of the obligor under the terms of the support order; and (2) examine the payment record to determine whether any arrearages are due for amounts which should have been paid prior to a twelve-week period which ends with the worksheet for which withholdings is sought to be enforced. *W.Va. Code,* § 48A–5–3(e)(1). Then, if none of the withholdings is for amounts which came due prior to such twelve-week period, then:

> "When the obligor is supporting another spouse or dependent child other than the spouse or child for whom the proposed withholding is being sought, the amount withheld may not exceed fifty percent of the obligor's disposable earnings for that week."

*W.Va.Code,* § 48A–5–3(e)(2)(A). However, if a part of the withholding is for amounts which came due prior to such twelve-week period, then:

> "Where the obligor is supporting another spouse or dependent child other than the spouse or child for whom the proposed withholding is being sought, the amount withheld may not exceed fifty-five per-

---

**13.** Plaintiff's responsive memorandum, p. 5.

**14.** Plaintiff's complaint, Count Four, paragraph 13.

cent of the obligor's disposable earnings for that week."

*W. Va. Code,* § 48A–5–3(e)(3)(A).

*W. Va. Code,* § 48A–1–3(9) defines "earnings" as "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise," and defines "disposable earnings" as "that part of the earnings of any individual remaining after the deduction from those earnings of any amounts required by law to be withheld." The definition of "earnings" and "disposable earnings" are not confined to income received from any one employer of an obligor. Thus, the percentage limitations on amounts which may be withheld under the Act would not necessarily apply to the wages Mr. Roush receives from RP, but instead, would apply to Mr. Roush's total disposable earnings. Presumably, RP would have no knowledge of Mr. Roush's total disposable earnings. Nor would RP have the ability, obligation or right to inquire into Mr. Roush's income sources or to seek information relative to his financial obligations in order to ascertain this figure.

Furthermore, *W. Va. Code,* § 48A–5–3(e)(6) provides that:

> "If an obligor acts so as to purposefully minimize his or her income ... the amounts to be withheld as support payments may be based upon the obligor's potential earnings rather than his or her actual earnings, and such obligor may not rely upon the percentage limitations set forth in this subsection which limit the amount to be withheld from disposable earnings."

Again, RP has no ability or right to investigate whether Mr. Roush has acted to purposefully minimize his income under the Act.

■ In his responsive memorandum, however, Mr. Roush reasserts the argument that because RP was informed that excessive amounts were being garnished from his wages, and because RP's own records indicated this, "RP was under a duty to investigate and upon confirmation to cease such illegal, improper and excessive garnishment."[15] Again, Mr. Roush has provided absolutely no authority which would impose upon an employer such a duty. Mr. Roush has not alleged that RP suggested amounts in excess of that which was required by the notices served on RP, or that RP played any role in determining what amount of Mr. Roush's wages would be suggested by the DHS. The undisputed fact remains that RP did no more than take those actions which West Virginia law required. Thus, the Court concludes that in spite of what RP knew or was told by Plaintiff regarding the propriety of the percentage of Mr. Roush's wages which were suggested, RP had no duty to conduct its own investigation. The Enforcement of Family Obligations Act clearly does not contemplate such a responsibility being imposed upon an employer, and the Court is unaware of any other decision which would create such a duty. Thus, the Court concludes that Mr. Roush's complaint, to the extent that it charges RP with suggesting an illegally high amount of Mr. Roush's net weekly income pursuant to *W. Va. Code,* § 48A–5–3(e), fails to state a claim upon which relief can be granted. Accordingly, Count Four of Mr. Roush's complaint is dismissed as to RP.

Based on the foregoing reasons, the Court concludes that Mr. Roush's complaint has failed to state a claim for which relief can be granted against RP. Accordingly, RP's motion to dismiss is granted.

## III.

Also pending before the Court is a motion to dismiss by Mrs. Roush pursuant to *Rule* 12(b)(6), Federal Rules of Civil Procedure. Mr. Roush has filed a memorandum of law in opposition, to which Mrs. Roush has replied. Mr. Roush's action against Mrs. Roush is made pursuant to 42 U.S.C. § 1983. The civil rights statutes provide causes of action to persons allegedly deprived of federal constitutional rights pursuant to color of state law. Mr. Roush's complaint states that Mrs. Roush, "together with the Department of Human Services

---

**15.** Plaintiff's responsive memorandum, p. 2.

and its employee Betty Wickline initiated the wage suggestions complained of herein." Thus, from the complaint, Mr. Roush's involvement in the case was limited to applying for services as an obligee pursuant to *W.Va.Code*, § 48A–1–1. This appears to be the only basis asserted by Mr. Roush in his complaint from which the Court is asked to infer that Mrs. Roush acted under color of state law.

In her motion to dismiss, Mrs. Roush relies upon *Calvert v. Sharp,* 748 F.2d 861, 862 (4th Cir.1984). *Calvert* held that:

"A person acts under color of state law only when exercising power possessed by virtue of state law and made possible only because the wrongdoer is clothed in the authority of state law."

Mrs. Roush also relies upon *Jackson v. Pantazes,* 810 F.2d 426 (4th Cir.1987), wherein the Fourth Circuit quoted *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). In *Lugar,* the United States Supreme Court devised the test for determining when the conduct of an actor is fairly attributable to the state so as to render his/her wrongful conduct the denial of a federal right, actionable under Section 1983.

"First, the deprivation must be caused by the exercise of some right or privilege created by the state or by a rule of conduct imposed by the state or by a person for whom the state is responsible.... Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the state."

*Id.* at 937, 102 S.Ct. at 2753–54.

■ In *Jackson,* the Fourth Circuit found that a private bail bondsman who worked with a police officer to gain access to a private individual's home and who jointly harassed and assaulted the individual while in search of a fugitive met the tests articulated in *Lugar* for when a private citizen can be deemed to be a state actor. The facts set forth in *Jackson* indicate that in the eyes of the plaintiff homeowner there was no way to distinguish the private bondsman from the police officer. The allegations of joint activity asserted by Mr. Roush in his complaint, however, clearly do not rise to the level of joint activity found in *Jackson.*

In the instant action, Mrs. Roush "concedes for the limited purpose of her motion to dismiss that the first part of the [*Lugar*] test is factually alleged in or reasonably inferred from [Mr. Roush's] complaint." [16] Thus, the sole issue for the Court to decide is whether Mrs. Roush, in applying for services as an obligee pursuant to *W.Va.Code*, § 48A–1–1, is a state actor.

Mr. Roush, however, attempts to have this issue evaluated in the context of a prejudgment attachment action. In this vein, Mr. Roush asserts that:

"The wage withholding action taken against his employer by Defendant Betty Wickline and the Department of Human Services based upon the filing an application of [Mrs. Roush] was a taking without due process as no hearing and Circuit Court order was first obtained and entered as required by state law...." [17]

Mr. Roush then directs the Court to the second headnote in *Lugar,* which states as follows:

"Joint action with a state official to accomplish a prejudgment deprivation of a constitutionally protected property interest will support a claim under 42 U.S.C. § 1983."

*Lugar, supra,* at 927 fn. 6, 102 S.Ct. at 2748 fn. 6.

Notwithstanding, the *Lugar* court went on to state:

"[W]e do not hold today that 'a private party's mere invocation of state legal procedures constitutes joint participation or conspiracy with state officials satisfy-

---

**16.** Reply of Defendant, Judith Roush, to Plaintiff's memorandum in opposition to Defendant Judith Roush's motion to dismiss, p. 3.

**17.** Plaintiff's memorandum in opposition to Defendant Judith Roush's motion to dismiss, p. 5.

ing the section 1983 requirement of action under color of law.' "

*Id.* at 939, n. 21, 102 S.Ct. at 2755, n. 21.

The court further ruled that "[t]he holding [above] is limited to the particular context of prejudgment attachment." *Id. Lugar*, therefore, is inapplicable to the case at bar because *W.Va.Code*, § 48A–1–1 is not a prejudgment attachment statute. The Child Advocate Office and the statutes authorizing the withholding of an obligor's wages do not come into play until *after* there has been a lawsuit creating the duty to pay child support, and after there has been a divorce decree ordering child support.

Finally, Mr. Roush directs the Court to the decision in *White v. White*, 731 F.2d 1440 (9th Cir.1984), which he asserts as "[b]eing almost foursquare with the facts *sub judice*." [18] In *White*, the plaintiff sued his former wife along with a state judge who deprived the plaintiff of a portion of his military requirement benefits by enforcing a state divorce judgment finding 80% of his retirement benefits to be community property which judgment was rendered void by a subsequent Supreme Court decision. Mr. Roush, however, neglected to note in his responsive memorandum that the Ninth Circuit affirmed the district court's dismissal of the plaintiff's Section 1983 action on the ground that the plaintiff failed to state a claim upon which relief can be granted.

The Court, therefore, concludes that the facts as alleged in Mr. Roush's complaint fail to create the inference that Mrs. Roush acted under color of state law or acted such that her conduct can be considered to be joint participation with the state. Accordingly, Mrs. Roush's motion to dismiss is granted.

## IV.

As previously stated, *supra*, DHS as well as their paralegal, Wickline, are named as Defendants in this action. Mr. Roush's complaint asserts that the "child advocate office of the Department of Human Services ... act[ed] in concert with its employee and paralegal Betty Wickline [and are] responsible for the illegal and/or unconstitutional ... wage suggestions." [19] Mr. Roush contends that the foregoing represents a violation of his civil rights pursuant to Section 1983. Neither DHS nor Wickline have moved the Court to dismiss the complaint against them. Notwithstanding, the Court, *sua sponte*, chooses to address the issue as to whether Mr. Roush's complaint states a complaint against DHS and Wickline.

■ In his complaint, Mr. Roush asserts that the actions of DHS and Wickline were illegal because they suggested an "illegally high and usurious amount from Plaintiff's weekly net income" in violation of *W.Va. Code*, § 48A–5–3(f)(3)(A).[20] Section 1983, however, protects individuals from being deprived of their federal constitutional rights. Simply alleging that the state has violated a statute does not, in and of itself, suffice to allege a federal constitutional deprivation. Section 1983 was intended to vindicate only federal rights determined under federal substance of law, not claims arising under state law. *Weller v. Dept. of Social Services*, 901 F.2d 387 (4th Cir.1990) (violations of state law do not provide basis for due process claim). Accordingly, Count Four of Mr. Roush's complaint is dismissed.

■ Counts Two and Three, however, further allege that the suggestion of Mr. Roush's wages in amounts in excess of the amounts that Mr. Roush was ordered to pay as support constitutes a violation of his federal right to due process. Notwithstanding these allegations, a Section 1983 action requires the deprivation of a constitutional right by a *person* acting under color of state law.

■ In *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), the Court considered

---

**18.** Plaintiff's memorandum in opposition to Defendant Judith Roush's motion to dismiss, p. 5.

**19.** Plaintiff's complaint, p. 3.

**20.** Plaintiff's complaint, Count Four.

whether the state is a "person" under Section 1983. After thoroughly analyzing the historical background giving rise to Section 1983, the Court concluded that neither the state nor its officials are persons within the meaning of Section 1983. The Court went on to conclude:

"Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants to seek a remedy against a state for alleged deprivations of civil liberties."

491 U.S. at 66, 109 S.Ct. at 2309. *See also Monell v. Dept. of Social Services of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In reaching this decision, the Court determined that the scope of Section 1983 is circumscribed by the scope of the Eleventh Amendment immunity which bars such actions unless the state waives its immunity from such suits.

The allegations by Mr. Roush against Wickline merely allege that she, as an employee of DHS (and thus in her official capacity) initiated the suggestion of his wages.

Accordingly, Mr. Roush's complaint against DHS and Wickline is dismissed.