420 S.E.2d 909

Darlene BELCHER and Melissa Arnold, Plaintiffs Below, Petitioners,

v.

Mary TERRY, Acting Director of the Child Advocate Office, West Virginia Department of Human Resources, and Taunja Willis Miller, Secretary of the West Virginia Department of Health and Human Resources, Defendants Below, Respondents.

No. 20530.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 28, 1992.

Decided July 16, 1992.

WORKMAN, Justice:

This case is before the Court upon an August 27, 1991, order of the Circuit Court of Kanawha County which certified the following question to this Court:

Is the employer of an obligor of child support or alimony who enters into a cash payment arrangement for the services of his employee in order to assist the obligor in avoiding the duty of payment of child support or alimony liable for actual and punitive damages resulting therefrom.[1]

The lower court answered this question in the affirmative. Upon review of the arguments of the parties and all the matters of record submitted before the Court, we agree with the lower court's answer to the certified question.

## BELCHER

This action involves two separate obligors who have attempted to evade their respective child support obligations by entering into cash employment arrangements with their employers. The stipulated facts[2] reveal that on October 6, 1987, the obligor, Timothy Belcher, and the petitioner, Darlene Belcher, were granted a divorce in which Mr. Belcher was ordered to pay thirty dollars per month child support. Mr. Belcher paid nothing in 1988, a total of ninety dollars in 1989 and nothing in 1990.

Since the late fall of 1989, Mr. Belcher was employed by Dennis Browning d/b/a Dude's Used Auto Sales, as a mechanic. Mr. Belcher and his employer entered into an agreement whereby the employer paid Mr. Belcher's wages in cash without mak-

Daniel F. Hedges, Charleston, for petitioners.

Jeffrey K. Matherly, Asst. Atty. Gen., Charleston, for respondents.

1. While the certified question addresses only the issue of employee liability, the petitioners' prayer for relief specifically asks the Court to give the Child Advocate Office the authority to institute the civil actions for damages against the sources of income. Thus, since this issue is tangentially related to the certified question, we resolve it in Section II of this opinion. *See infra* 187 W.Va. at 643–645, 420 S.E.2d at 914–916.

2. The recitation of facts in this case is taken from the August 27, 1991, order certifying the

above-mentioned question to this Court. While the respondent indicates that many of the factual statements made by the petitioners are not supported by the record, no specific disputed facts were brought to this Court's attention. Suffice it to say that we do agree that the record currently before the Court is sparse and further development of the facts is necessary by the lower court.

ing any payroll deductions and without reporting the payment of these wages or paying any payroll taxes to the appropriate state and federal authorities.

In January 1990, the petitioner filed a request for services with the respondent Child Advocate Office (hereinafter referred to as CAO) in the Lincoln County office. The petitioner's request provided the CAO with information and evidence regarding Mr. Belcher's employment status. From January 1990 through June 1990, the petitioner continually advised the CAO of the obligor's continued employment, the type of employment and the specific location of the employment. The CAO consistently denied the existence of the obligor's employment, refused to investigate the petitioner's reports that the obligor was employed, refused to take legal steps to recover the support payments due, and maintained that there was absolutely no potential for collecting any child support.

Consequently, in July 1990, the petitioner filed a complaint in the Circuit Court of Lincoln County, West Virginia, against the obligor and his employer, seeking a declaration relative to nonpayment of child support on the part of the obligor and the unlawful employment remuneration arrangement between the obligor and his employer. As a result of this complaint, a settlement order [3] was entered on December 10, 1990, between the petitioner, Mr. Belcher, and his employer. The CAO never took any action against the employer.

### ARNOLD

On November 29, 1990, the petitioner, Melissa Arnold, completed an application for CAO services and provided it to the CAO office. In the application, the petitioner notified the CAO of Roger Arnold's, the obligor's, employment. No action was taken by the CAO concerning the petitioner's application.

Then, on January 24, 1991, the petitioner was granted a divorce from the obligor. Pursuant to the order granting the divorce, which was entered on February 11, 1991, the obligor was required to pay $250 per month in child support. The stipulated facts indicate that the obligor has failed to make any child support payments.

The facts further indicated that after Mr. Arnold's child support obligation became clear, he told the petitioner that he switched to a cash employment arrangement to defeat his duty to pay child support. Since March 1991, the obligor has been employed by George Stone d/b/a George Stone, Inc., under an arrangement whereby the employer paid the obligor's wages in cash without making any payroll deductions and without reporting the payment of the wages or paying the appropriate payroll taxes to state and federal authorities. The obligor works for this employer six days a week on a full-time basis. Moreover, the petitioner observes the obligor in his employment almost every day.

In March 1991, the petitioner provided the CAO in Lincoln County with information and evidence regarding the obligor's employment status. The petitioner again in April 1991 informed the CAO about the obligor's employment. The petitioner has still not received a single child support payment, nor has she received any information from the CAO regarding her case. Moreover, according to the petitioner, a review of the petitioner's CAO file by coun-

---

**3.** The December 10, 1990, settlement order provided for the following: 1) a decretal judgment against the defendant Timothy Belcher in the amount of $1,189.95 for accrued child support plus interest; 2) an agreement by the defendants, including Dennis Browning d/b/a Dude's Used Auto Sales, to automatic wage withholding in the amount of $50 per month until the decretal judgment was satisfied; and 3) an agreement that the defendant Dennis Browning shall be liable fore [sic] arrearage only during the period of time the defendant, Belcher, performed services for him (beginning December, 1989) and only in the event that the arrearages are not paid by the time of the termination of their relationship in which event the plaintiff may reinstate this action for a determination of liability, if any.

sel on July 22, 1991, indicated not a single activity in the file relative to this petitioner or obligor since it was opened. Unlike the Terry case, no lawsuit has been filed by petitioner Arnold against the obligor and/or his employer.

## I.

■ The first issue is whether a source of income [4] who knowingly and willfully enters into an agreement with an obligor of child support to pay the obligor his wages in cash so that the obligor can conceal his employment and evade paying child support is liable for actual and punitive damages resulting from the agreement with the obligor. The petitioners maintain that the sources of income are liable for actual and punitive damages because they are acting in direct defiance of a court order and they are conspiring in contravention of public policy, which is to deprive the petitioners' children of the support necessary for their well-being. The respondent argues that there is no clear basis in the law to support such a claim against a source of income, but that if such a remedy existed, the respondent would avail itself of that remedy in an effort to increase the collection of child support payments.

It is clear that the statutory law of this state only provides for actions against employers or any other source of income who, upon receipt of notice of withholding from the CAO, fails to withhold income in accordance with the notice. *See* W.Va.Code §§ 48A–5–3(n), –3(f)(6) (Supp.1991); [5] In sit-

uations such as these, the Code provides that the source of income is liable to the obligee "for any amount which the source of income fails to withhold from income due an obligor." W.Va.Code § 48A–5–3(n). Moreover, West Virginia Code § 48A–5–3(o) makes it a misdemeanor for "[a] source of income ... [to] knowingly and willfully conceal[ ] the fact that the source of income is paying income to an obligor, with the intent to avoid withholding from the obligor's income of amounts payable as support...." [6]

The pertinent statutory provisions only envision actions against sources of income who, after receiving notice from the CAO, fail to withhold income pursuant to the notice. *See* W.Va.Code §§ 48A–5–3(n), – 3(f)(6). The provisions leave unaddressed the present factual scenario before the Court involving the source of income who knowingly and willfully conceals the obligor's employment, thereby precluding the CAO from serving a notice so that withholding from the obligor's wages can be obtained. It is, however, inconceivable that a legal remedy does not exist against an employer who engages in even more egregious conduct than that governed by the statute.

Support for this legal right to bring action and recover actual damages against a source of income in these situations originates under the ordinary creditor remedy found in West Virginia Code § 38–5A–3 (1979). This provision provides in pertinent part that

> [a] judgment creditor may apply to the court in which the judgment was recov-

---

**4.** West Virginia Code § 48A–1–3(19) (Supp. 1991) defines source of income as "an employer or successor employer or any other person who owes or will owe income to an obligor."

**5.** Pursuant to West Virginia Code § 48A–5–3(n):

A source of income is liable to an obligee, including the state of West Virginia or the department of health and human resources where appropriate, for any amount which the source of income fails to withhold from income due an obligor following receipt by such source of income of proper notice under subsection (f) of this section: Provided, That a source of income shall not be required to vary

the normal pay and disbursement cycles in order to comply with the provisions of this section.

West Virginia Code § 48A–5–3(n) was previously West Virginia Code § 48A–5–3(o) (1986). While the subsection letters changed, the pertinent statutory provisions are substantially the same. We note the change in the subsection letter only because West Virginia Code § 48A–5–3(o) (1986) technically governs the Belcher case since the initial application was filed with the CAO in January 1990.

**6.** This particular statutory provision was not enacted until 1991.

ered or a court having jurisdiction of the same, without notice to the judgment debtor, for a suggestee execution[7] against any money due or to become due within one year after the issuance of such execution to the judgment debtor as salary or wages arising out of any private employment.

W.Va.Code § 38–5A–3.

■ Since we have previously held in syllabus point 1 of *Hudson v. Peck*, 183 W.Va. 300, 395 S.E.2d 544 (1990) (quoting Syl. Pt. 1, *Goff v. Goff*, 177 W.Va. 742, 356 S.E.2d 496 (1987)) that " '[m]atured installments provided for in a decree, which orders the payment of monthly sums for alimony or child support, stand as "decretal judgments" against the party charged with the payments,' " a wage suggestion could certainly be issued pursuant to West Virginia Code § 38–5A–3 for collection from the suggestee source of income the money owed the petitioners, judgment creditors, under the decretal judgments.

Moreover, pursuant to West Virginia Code § 38–5A–5 (1972) the suggestee source of income who "fail[s] or refuse[s] to pay over to the officer serving the execution or to the judgment creditor the required percentage of indebtedness . . . shall be liable to an action therefor by the judgment creditor named in the execution. . . ." *See Turk v. McKinney*, 132 W.Va. 460, 52 S.E.2d 388 (1949).

In *Turk*, this Court specifically stated that "[u]pon being properly served with a valid suggestee execution, it is an employer's duty to the judgment creditor to adhere strictly to the demands of such suggestee execution, and no deviation therefrom can be tolerated." *Id.*, 132 W.Va. at 467–68, 52 S.E.2d at 392. Further, we placed the burden upon the judgment credi-

tor to prove damages against a suggestee resulting from the failure or refusal to comply with the suggestee execution. *Id.*, 132 W.Va. at 460, 52 S.E.2d at 389, Syl. Pt. 2.

■ Therefore, the notice provisions of West Virginia Code §§ 48A–5–3(n), –3(f)(6) cannot be deemed to have taken away the ordinary creditor remedies found in West Virginia Code §§ 38–5A–3, –5, where the source of income conspires with the obligor to conceal the obligor's employment thereby precluding withholding pursuant to West Virginia Code §§ 48A–5–3(n), –3(f)(6). Under these circumstances, it logically follows that a source of income is liable to an obligee for any amount of child support which the source of income fails to withhold from the obligor's wages where the source of income knowingly and willfully enters into an agreement to pay an obligor his wages in cash in order to assist the obligor in evading child support payments. To establish that a source of income is knowingly and willfully engaged in such conduct, the obligee must produce clear, cogent and convincing evidence that the source of income had knowledge of the obligor's intent to evade child support payments through receipt of cash wages.

Additionally, when a source of income and an obligor engage in such willful, wanton and egregious conduct, punitive damages may also be recoverable. Not only have both the source of income and the obligor acted to contravene the substantial public policy which favors the payment and collection of child support,[8] but they have also perpetrated an intentional wrong upon the obligee and the CAO. In *Addair v. Huffman*, 156 W.Va. 592, 599, 195 S.E.2d 739, 743 (1973) (citing *George v. Norfolk & W. Ry. Co.*, 80 W.Va. 317, 92 S.E. 430 (1917)) we held that "where there is an

---

**7.** Suggestee execution is "an execution differing from an ordinary execution upon a judgment only in that it is directed against money due or to become due to the judgment debtor from the suggestee as therein set out." W.Va.Code 38–5A–1(2) (1939).

**8.** *See* West Virginia Code § 48A–1–2 (1986) which provides that the reason the Family Obligations Enforcement Act, West Virginia Code §§ 48A–1–1 to –4 (1986 & Supp.1991), was enacted was to "encourage and require a child's parents to meet the obligation of providing that child with adequate food, shelter, clothing, education, and health and child care."

intentional wrong, or where there are circumstances which warrant an inference of malice, willfulness, or wanton disregard of the rights of others, punitive damages may be awarded."

■ Consequently, punitive damages are recoverable against an obligor and the source of income where evidence demonstrates that the obligor and the source of income knowingly and willfully engaged in a cash wage agreement so that the obligor could evade paying child support. The punitive damages "must bear a reasonable relationship to the potential of harm caused by the ... [obligor's and source of income's] actions" and cannot be awarded without a finding of compensatory damages. Syl. Pt. 1, in part, *Garnes v. Fleming Landfill, Inc.*, 186 W.Va. 656, 413 S.E.2d 897 (1991). Moreover, the award of any punitive damages in these cases should be in accordance with all the other guidelines set forth in the *Garnes* decision.

## II.

■ The next issue before this Court is who has the authority to initiate both wage withholding actions against the obligor and civil actions against sources of income for failing to withhold child support payments.[9] The petitioners maintain that the CAO has "a statutory monopoly on the initiation of wage withholding procedures" and thus, an obligee must go to the CAO for wage withholding. Therefore, the petitioners further maintain that the CAO is vested with the legal duty to take all appropriate action, including the initiation of civil suits against

employers, to ensure that support payments are obtained when obligors are receiving cash wages to avoid child support payments. *See* W.Va.Code §§ 48A-2-2 (Supp.1991) and 48A-5-3. Finally, in oral argument the petitioners asserted that while the CAO should have the responsibility to bring these actions, it should not be to the exclusion of obligees. While the respondent does not deny their obligation to pursue wage withholdings, as to civil actions for damages, they assert only that if there existed a clear legal right for such actions against sources of income, the CAO would pursue them in an effort to increase the collection of child support payments and to deter sources of income from entering into these types of cash arrangement.

West Virginia Code § 48A-5-3(a) provides in part that "[t]he withholding from an obligor's income of amounts payable as spousal or child support shall be enforced by the children's advocate...." Obviously, the statute imposes a mandatory duty on the CAO to enforce this provision. However, nothing in this provision limits the right of obligees to themselves institute actions involving wage withholdings against obligors and sources of income to the CAO. Quite clearly, an obligee of a child support order can institute proceedings against obligors and sources of income to obtain payment of child support where the CAO fails or refuses to bring such action.

This ruling in no way lessens the legal duties and responsibilities of the CAO. As previously mentioned, the CAO has an affirmative duty to collect child support pay-

---

**9.** Technically, these are tangential issues since they were not the subject of the certified question, but they were discussed by petitioners both in their brief and in oral argument. The respondent's brief joins in the legal arguments of petitioners as to the certified question, but is extremely unhelpful in that the CAO makes no real effort to brief or argue any of these issues. It is extremely disconcerting to this Court to have such a significant matter tossed into our lap without any discernible effort on the part of either of the parties to elucidate these issues in any depth.

Furthermore, the writer of this opinion at the conclusion of oral argument requested both sides to submit supplementary briefs (both on the main issues raised in the petition and on the law in other jurisdictions relating thereto) since the briefs were patently inadequate for the importance of the issues raised. Neither side submitted any additional material, nor had the courtesy to indicate they had unearthed no further information or argument they desired to impart. When this Court is asked to develop and enunciate new law in any arena, the lawyers should at least do their part!

ments. W.Va.Code § 48A-5-3; *see Roush v. Roush*, 767 F.Supp. 1344, 1347 (S.D.W.Va.), *aff'd*, 952 F.2d 396 (4th Cir. 1991), *cert. denied*, — U.S. —, 112 S.Ct. 1948, 118 L.Ed.2d 552 (1992) (Legislature vested CAO with complete responsibility for collecting child support).

Moreover, West Virginia Code § 48A-2-2(a) states that the primary function of the CAO is to "protect[ ] and promote[ ] the best interests of children...." It is in the best interests of the children involved in these cases for the CAO to actively investigate these situations and then institute all necessary legal proceedings against the source of income. Not only is the CAO more familiar with the process, but in many cases obligees are not able to afford to pursue collection of child support. Consequently, the CAO has the authority to institute civil actions for compensatory and punitive damages against sources of income for failing to withhold child support payments. The existence of such authority in the CAO in no way limits the right of obligees to themselves institute civil action against sources of income where the CAO fails or refuses to bring action.

Further, the active investigation of these cases obviously must mean more than the CAO making a phone call to the employer. When an obligee presents the CAO with the type of information which was presented to the CAO in Lincoln County, the CAO has a duty to verify the accuracy of this information by a more aggressive means of investigation than just a phone call and blanket acceptance of the employer's story. In most cases, an employer is not going to admit over the phone to a state agency that he is paying an employee cash wages in order to aid the employee in circumventing payment to that state agency.

Having answered the certified question, this case is dismissed from the docket of this Court.

Certified question answered.